******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CAROLINE HIRSCHFELD *v.* ROBERT B. MACHINIST
(AC 35096)

Bear, Sheldon and Flynn, Js.*

*Argued March 6—officially released July 8, 2014*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Hon. Stanley Novack, judge trial referee [judgment]; Shay, J. [motion for allocation].)

*Kenneth A. Votre*, for the appellant (plaintiff).

*Dana M. Hrelic*, with whom was *Kenneth J. Bartschi*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Caroline Hirschfeld, appeals from the judgment of the trial court, which, in relevant part, held her responsible for payment of 55 percent of the costs and fees incurred by the defendant, Robert B. Machinist, in extending and providing security for a line of credit from First Republic Bank. On appeal, the plaintiff claims that the court committed error when, in allocating an escrow fund in which both parties had an interest, it added terms to the plain language of the parties' separation agreement, improperly held her responsible for 55 percent of those costs and fees, and authorized payment thereof from the escrowed proceeds. We reverse the judgment of the trial court.

The following facts are relevant to this appeal. As explained by the trial court: "The marriage of the parties was dissolved by decree . . . on February 2, 2007. At that time, the parties filed with the court a Separation Agreement . . . which the court approved and incorporated in its decree by reference. More than five years, several appeals, and one hundred [and] fifty motions later, the parties continue unabated their litigious ways. . . .

"At the time of the dissolution, the parties had two outstanding lines of credit, one to [First] Republic Bank in the amount of $990,400 and another to Citibank in the amount of $595,000. Each line carried interest. The parties agreed that the [plaintiff] would pay 55 [percent] and the [defendant] 45 [percent] of the principal of each loan from their respective shares of the proceeds from the sales of the Greenwich and St. Barth[elemy] properties. In addition, while the [defendant] would continue to pay the monthly interest on these loans until such time as 'the liabilities are extinguished,' he would be entitled to a credit from the [plaintiff] in the amount of 55 [percent]."

On October 26, 2010, the defendant filed a motion for order with the trial court stating that the property in Vermont and in Greenwich had been sold, but that the property in St. Barthelemy still was for sale. The motion provided that the proceeds from the sales had been divided pursuant to the agreement, but that $45,468.27 remained in escrow, and the defendant requested that the court make a determination as to the proper allocation of the escrow. On April 9, 2012, the defendant amended his prayer for relief, requesting that the court award attorney's fees and any other equitable or legal relief that was warranted. The court held a series of hearings on this motion and several other motions that were pending before it. Specifically related to this motion, the defendant presented evidence that because of the delay in selling the properties, much of which he attributed to the plaintiff's behavior in "serially disrupt[ing] the sale of [the] property over a period

of three and a half years," he incurred $26,774 in costs and fees as a result of his need to enter into a secured contract with First Republic Bank on the line of credit he had with that bank. He explained that First Republic Bank wanted some security for the line of credit, which previously had been unsecured; that he secured the debt with another of his homes, not related to the dissolution action; and that he incurred costs and fees in doing so. He contended that the plaintiff, pursuant to the agreement, was responsible for 55 percent of those costs and fees. In response, the plaintiff argued that the defendant had entered into this new secured line of credit with the bank on his own, that the agreement did not contain any provision requiring her to pay additional costs and fees incurred by the defendant, and that she was not responsible for those costs and fees.

The court issued its memorandum of decision on August 3, 2012, finding in relevant part that there remained a "home equity line balance" in the amount of $26,774, together with interest, on the bank line of credit, and that both parties were obligated to pay this pursuant to paragraphs 6.8 and 6.9 of the agreement. The court explained that pursuant to the agreement, the defendant bore the sole responsibility of maintaining a line of credit with First Republic Bank, with the understanding that he would be reimbursed for 55 percent of his expenditures. The court further explained that this balance was due to the costs and fees incurred by the defendant when he was required to enter into a secured line of credit with First Republic Bank to extend the unsecured line of credit that he was required to maintain under the parties' agreement, and that the need for this extension was due in large part to the actions of the plaintiff, which resulted in substantial delays in selling the properties. Accordingly, the court ordered that the plaintiff was responsible for 55 percent of the balance on the secured line of credit, along with any interest and late fees that the plaintiff had paid on the lines of credit. This appeal followed.

On appeal, the plaintiff claims that the court committed error when it added terms to the plain language of the agreement and improperly held her responsible for a portion of the costs and fees incurred by the defendant when he entered into a secured line of credit with First Republic Bank. We agree.

"It is well established that a separation agreement, incorporated by reference into a judgment of dissolution, is to be regarded and construed as a contract . . . . Accordingly, our review of a trial court's interpretation of a separation agreement is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with

the transaction. . . . If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Citations omitted; internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, 137 Conn. App. 690, 694–95, 50 A.3d 324, cert. denied, 307 Conn. 939, 56 A.3d 950 (2012).

For purposes of this appeal, three paragraphs of the agreement are claimed to be relevant. Each of the paragraphs is contained within Article VI of the agreement, which concerns the equitable division of assets. Paragraph 6.27 provides: "The parties shall each be responsible for the debts and liabilities shown on their respective financial affidavits and they shall share the balance of the First Republic [Bank] and Citibank loans, with the Wife paying 55 [percent] and the Husband paying 45 [percent]; except that the parties shall be equally responsible for the first $430,000 of the amount borrowed from Defendant's mother by the Defendant. The timing of payments of said liabilities shall be made pursuant to Paragraphs 6.9 (b) and 6.9 (c)."[1]

Paragraph 6.8 provides: "Upon the sale of any or all of the properties, all closing costs shall be paid 55 [percent] by the Wife and 45 [percent] by the Husband, including any mortgage balances, home equity line balances, real estate taxes, attorney fees, recording fees, typical and customary expenses for sale as determined in the jurisdiction where the property has been located."

Paragraphs 6.9 (a) and (b) provide: "(a) The net proceeds remaining shall be divided 55 [percent] to the Wife and 45 [percent] to the Husband. Each of the parties shall pay such federal, state and foreign taxes as may be imposed by any appropriate taxing authority in direct proportion to the percentage of the net proceeds received by the parties. The Wife shall be obligated to pay 55 [percent] of such taxes assessed and the Husband shall be obligated to pay 45 [percent] thereof.

"(b) From their respective net proceeds, the Wife shall be obligated to pay 55 [percent] and the Husband shall be obligated to pay 45 [percent] of the First Republic [Bank] liability ($990,400) and the Citibank liability ($595,000). Accordingly, simultaneously at the closing of the Greenwich and St. Barth[elemy] property, whichever closing shall first occur, the Wife shall pay First Republic [Bank] $544,720 and the Husband shall pay

First Republic [Bank] $445,680. In addition and at the same time, the Wife shall pay Citibank $327,250 and the Husband shall pay Citibank $267,750. The Wife shall be obligated to pay 55 [percent] and the Husband shall be obligated to pay 45 [percent] of the interest associated with these liabilities for the time period from January 1, 2007 and until such time as the liabilities are extinguished. The Husband shall continue to pay the interest monthly and he shall receive a credit for 55 [percent] of the amount he paid against the sum owed to the Wife as described on the attached Schedule A."

The plaintiff contends that there is no obligation contained within the clear and unambiguous language of the relevant portions of the agreement that requires her to pay for the costs and fees associated with the defendant's new secured line of credit from First Republic Bank. The defendant argues that "the principles of contract interpretation demonstrate that the plaintiff is responsible for a portion of the principal, interest and remaining balance pursuant to the plain language of the parties' separation agreement." Accordingly, he argues, the court correctly determined that the agreement required him to maintain a line of credit with First Republic Bank and, read as a whole, the agreement also required the parties to share, proportionally, the expenses associated therewith, which remain as a "balance" on the line of credit. We agree with the plaintiff.[2]

The portions of the integrated agreement that the defendant cites in support of his argument and in support of the court's decision simply do not set forth the requirement that the plaintiff pay the costs and fees associated with the defendant's unanticipated refinancing of the unsecured line of credit by obtaining a new secured line of credit from First Republic Bank.[3] Paragraph 6.27 of the agreement provides in relevant part that the parties shall share the balance of the First Republic Bank loan, with the plaintiff paying 55 percent and the defendant paying 45 percent, and that the timing of those payments be made in accordance with paragraph 6.9 (b). Paragraph 6.9 (a) provides in relevant part that the remaining net proceeds remaining after the property sales shall be divided 55 percent to the plaintiff and 45 percent to the defendant and that the parties are responsible for the payment of federal, state and foreign taxes that may be imposed according to their respective percentages. Paragraph 6.9 (b) provides in relevant part that the plaintiff is obligated to pay 55 percent, and the 45 percent, of the interest associated with the First Republic Bank liability ($990,400) for the time period from January 1, 2007, and until such time as that liability is extinguished. The defendant was responsible for the payment of monthly interest, but he was entitled to receive a credit for 55 percent of the amount he paid against the sum owed to the plaintiff. The relevant portion of paragraph 6.8 provides that, from their respective shares of the property sales, each

party shall pay, proportionally, all closing costs, including any mortgage balances, home equity line balances, real estate taxes, attorney fees, recording fees, and customary sale expenses.

Considering the plain language of the relevant terms of the agreement, we conclude that the costs and fees incurred in connection with the defendant's refinancing of the unsecured line of credit by obtaining a new secured line of credit from First Republic Bank were not included in the delineated closing costs set forth in paragraph 6.8 related to the sales of the parties' properties, nor were any closing costs and fees in connection with any subsequent refinancing provided for in paragraphs 6.9 or 6.27 of the agreement. We also conclude, therefore, that the court erred in holding the plaintiff responsible, pursuant to either paragraph 6.8, 6.9 or 6.27 of the agreement, for 55 percent of the costs and fees incurred by the defendant in refinancing the unsecured line of credit by obtaining a new secured line of credit from First Republic Bank, an event not referred to in that agreement.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

In this opinion SHELDON, J., concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Paragraph 6.9 (c) concerns the amount borrowed from the defendant's mother by the defendant and is not relevant to this appeal.

[2] Although our conclusion facially may appear to be inequitable because the defendant's alleged necessity to secure the First Republic Bank line of credit was found by the court to have occurred, in part, as a result of the delays caused by the plaintiff, the trial court's decision and the defendant's arguments before the trial court in support of his motion were based on their interpretations of what they separately have determined to be the relevant terms of the agreement, and not on equitable considerations or on whether the plaintiff's actions violated the judgment or any other order of the court, thus causing the defendant to incur additional or unnecessary costs and fees. It is clear that the court found that the delay in the sale of the properties, in part due to the actions of the plaintiff, resulted in the defendant's need to enter into a new secured line of credit, or risk default, and that his actions were "reasonable." The court's decision and the defendant's motion and arguments related thereto were based on the language of the agreement, which is subject to our plenary review on appeal.

Although the dissent raises the doctrine of good faith and fair dealing as its reason for concluding that the trial court's judgment should be affirmed, this doctrine was not raised by the defendant during trial nor did the court invoke the doctrine at any time. Accordingly, the plaintiff has never had an opportunity to be heard on the relevance or irrelevance of the doctrine. The dissent seeks to hold the plaintiff legally responsible under a theory that was never pleaded, argued or addressed by the trial court and against which the plaintiff never had an opportunity to defend. The defendant argued at trial that the language of the agreement required the plaintiff to pay 55 percent of his costs and fees, and he maintained that argument on appeal. Despite amending the prayer for relief in his motion for order to include equity, the defendant never invoked the doctrine of good faith and fair dealing and proceeded only on the basis that the plain language of the agreement required the plaintiff to pay 55 percent of the costs and fees he incurred in refinancing his home to provide for a secured line of credit.

In any event, the doctrine is inapplicable in this case because the defendant did not allege the plaintiff's bad faith: "To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she

reasonably expected to receive under the contract *must have been taken in bad faith*. . . . Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose. . . . *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 432–33, 849 A.2d 382 (2004)." (Emphasis in original; internal quotation marks omitted.) *TD Bank, N.A.* v. *J & M Holdings, LLC*, 143 Conn. App. 340, 348, 70 A.3d 156 (2013). "If the plaintiff fails to set forth factual allegations that the defendant acted in bad faith, a claim for breach of the implied covenant [of good faith and fair dealing] will not lie." (Internal quotation marks omitted.) Id., 349.

Additionally, we note that although the court may have found that the defendant incurred costs and fees because he needed to secure the applicable line of credit due, in part, to the delays caused by the plaintiff, the defendant also testified that he chose to refinance his home rather than provide cash collateral as security for the line of credit and that he did so without the knowledge of the plaintiff. He further testified that the equity line of credit on his home was still in existence at the time of trial and that the line continued to have an availability of one million dollars.

[3] The plaintiff acknowledged at trial that she was responsible for 55 percent of the original $990,400 debt and the interest on the line of credit: "With regard to [the plaintiff's] responsibil[ity] for the interest, yes. Is she responsible for the interest on the unsecured debt and the secured debt, yes, she is. You don't have to decide that. We concede it. We're not saying that because the debt changed and became secured and it has a different account number that we care, we don't. It's the same $990,000."