## CAROLINE HIRSCHFELD *v.* ROBERT B. MACHINIST
## (AC 33561)

Gruendel, Beach and Schaller, Js.

Argued March 19—officially released August 28, 2012

*Joseph T. O'Connor*, for the appellant (plaintiff).

*Kenneth J. Bartschi*, with whom were *Dana M. Hrelic* and, on the brief, *Arnold Rutkin*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Caroline Hirschfeld, appeals from the judgment of the trial court granting her motion for contempt and ordering the defendant, Robert B. Machinist, to pay an additional $36,959 in alimony for the 2007 taxable year and $17,731.97 in attorney's fees.[1] On appeal, the plaintiff claims that the court incorrectly interpreted a provision in the separation agreement and, in doing so, improperly restricted the plaintiff's ability to obtain documents relating to

---

[1] The plaintiff claimed in her motion for contempt that the defendant had underpaid alimony for the 2007 tax year by "no less than $97,888.24 . . . ."

the defendant's earned income. We agree with the plaintiff and, accordingly, reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our review. The plaintiff and the defendant had entered into a separation agreement (agreement), the terms of which the court incorporated by reference into the judgment dissolving their marriage on February 2, 2007. Paragraph 3.1 of the agreement provides that the defendant shall pay alimony and child support to the plaintiff according to the following formula: (a) "40 [percent] of the [defendant's] first $400,000 of earned income in each calendar year . . ."; (b) "30 [percent] of the [defendant's] earned income from $400,001 to $900,000 in each calendar year"; (c) "20 [percent] of the [defendant's] earned income from $900,001 per year to $1,500,000 in each calendar year"; and (d) "0 [percent] on the [defendant's] earned income that exceeds $1,500,001 in each calendar year. . . ."[2]

Paragraph 3.5 of the agreement provides: "For any year for which the [defendant] pays less than the maximum amount that could be due to the [plaintiff], based upon compensation up to $1,500,000 of gross earned income, the [defendant] shall provide to the [plaintiff] by March 15th of the year following any and all W-2 and 1099 forms, or other documents to corroborate the [defendant's] earned income for the year ending on the previous December 31st. The [plaintiff] shall be entitled to have such documents reviewed by a [c]ertified [p]ublic [a]ccountant of her choosing. If it is determined that

---

[2] Paragraph 3.3 of the agreement provides that " 'gross earned income' shall mean income earned by the [defendant] for his personal services and shall include, by way of illustration, and not necessarily by way of limitation: wages, bonuses, commissions, director's fees, management fees, performance fees [and] non-cash compensation awarded to the [defendant] by reason of his personal services, such as stock." Paragraph 3.3 also provides that earnings that result from "passive investments" are to be excluded from " 'gross earned income.' "

the [defendant] has underpaid the amount of alimony due to the [plaintiff] in the preceding year, then in such event the [defendant] shall be charged with the reasonable cost of the accountant's review. Any arrears or overpayment on the [defendant's] alimony obligation shall be paid immediately upon the determination of such arrearage or overpayment."

On September 17, 2010, the plaintiff filed a motion for contempt with the trial court alleging that, based on the documents she had been provided, the defendant had underpaid alimony for the 2007 tax year by "no less than $97,888.24" and that the defendant had "failed, refused and neglected to provide the [plaintiff] with the documents required by their agreement . . . ."[3] The plaintiff also sought $17,731.97 in attorney's fees.

During a hearing on that motion held on January 27, 2011, the plaintiff's counsel argued that paragraph 3.5 of the agreement required the disclosure of financial documents beyond the defendant's tax filings.[4] The

---

[3] We note that this motion was not the first filed by the plaintiff in connection with the defendant's payment of alimony in 2007. Specifically, the plaintiff filed a motion for contempt on September 18, 2008, claiming that the defendant had failed to produce financial records for the 2007 taxable year pursuant to paragraph 3.5 of the agreement. This motion was never ruled on by the court. On the same day, the plaintiff filed a motion with the court seeking an order that compelled the defendant to participate in a deposition and produce certain financial documents pertaining to his income. This motion was granted by the court, *Schofield, J.*, on November 10, 2008. When the defendant failed to produce documents relating to a family trust; see footnote 4 of this opinion; pursuant to the court's order, the plaintiff filed a motion for contempt. The defendant filed an objection, which the trial court sustained, stating: "The court reviewed the [November 10, 2008] transcript. Based upon that review and its reading of *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 269, [540 A.2d 713] (1988), the court concludes that its [November 10, 2008] order was error." The court continued: "[U]ntil the court acts on a motion to open, the earlier judgment is still intact and neither our rules of practice nor our statutes provide for such a thing as postjudgment discovery." This ruling is not, however, the subject of the present appeal.

[4] Specifically, the plaintiff sought the disclosure of documents relating to a family trust under which the defendant, as trustee, might have been entitled

court disagreed, stating: "I think that agreements, you know, they have to be read as a whole. They have to be read . . . to give practical effect to the document. What you are asking this court to do in essence is to ensure, I mean to guarantee that year after year seriatim that this case will never end. Because your client will have in essence a veto or . . . a way to basically second guess everything that [the defendant] does from now until his obligation terminates." The court continued: "This court is not prepared to do that. So bottom line is the agreement is the agreement, and my interpretation of this agreement is clearly that you use the forms, the standard forms. The tax return and the standard forms that corroborate the income, and that's what you deal with." On May 31, 2011, the court granted the plaintiff's motion for contempt and ordered the defendant to pay $36,959 in unpaid alimony plus interest, and $17,731.97 in attorney's fees. This appeal followed.

On appeal, the plaintiff claims that the court incorrectly interpreted paragraph 3.5 of the agreement and, in doing so, improperly restricted the plaintiff's ability to obtain documents relating to the defendant's earned income. In response, the defendant argues that the plaintiff had received sufficient documents to corroborate the amount of his gross earned income and that requiring further disclosure would, in effect, provide the plaintiff with "unfettered access to [the defendant's business] records . . . ."

We begin our analysis of the plaintiff's claim by setting forth the applicable standard of review. "It is well established that a separation agreement, incorporated by reference into a judgment of dissolution, is to be

___

to compensation. The plaintiff sought these documents under the theory that the defendant, although entitled to compensation for his services as trustee, declined to accept funds from the trust in order to reduce the amount of alimony owed to the plaintiff.

regarded and construed as a contract . . . . Accordingly, our review of a trial court's interpretation of a separation agreement is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 354–55, 999 A.2d 713 (2010); *Allen* v. *Allen*, 134 Conn. App. 486, 493, 39 A.3d 1190 (2012). "In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Hopson* v. *Hopson*, 135 Conn. App. 690, 694–95, 42 A.3d 528 (2012).

Paragraph 3.5 of the agreement states that the defendant is required to provide "any and all W-2 and 1099 forms, or other documents to corroborate the [defendant's] earned income . . . ." The language of this provision expressly indicates that the parties intended to require the disclosure of those documents necessary to corroborate the amount of gross earned income reported by the defendant. If, as the court concluded, paragraph 3.5 entitles the plaintiff to obtain only the defendant's tax forms, the plaintiff's review would be

restricted to determining whether the defendant made a mathematical error in calculating the sum of alimony due. Although the court was correct to note that such a limitation would provide an expedient resolution to any dispute between the parties regarding unpaid alimony, the agreement clearly and unambiguously contemplates a more thorough review. Consequently, we conclude that the court incorrectly interpreted paragraph 3.5 and improperly restricted the plaintiff's ability to obtain documents relating to the defendant's earned income.[5]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

[5] Having reached this conclusion, we need not address whether the plaintiff was entitled to the production of additional documents through the process of discovery in light of this court's ruling in *Oneglia* v. *Oneglia*, 14 Conn. App. 267, 540 A.2d 713 (1988). Furthermore, we agree with the plaintiff's assertion that, because we are remanding the case for additional proceedings, we need not address whether the court properly calculated the amount of alimony due on the record presently before us.