******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FLYNN, J., dissenting. This case presents an important issue concerning whether delay in the performance of a contractual promise that causes loss to another party to the contract is properly the responsibility of the delaying party to the extent she caused it. In my opinion, under the particular facts of this case and based on the implied covenant of good faith and fair dealing, the court properly found that it was. Accordingly, I respectfully dissent and would affirm the decision of the court.

When the parties to this dissolution action could not agree on whether the losses suffered by the defendant, Robert B. Machinist, due to the delay in selling their property in St. Barthelemy should be shared by the plaintiff, Caroline Hirschfeld, the defendant filed a motion with the court requesting that it make a determination as to the proper allocation of funds held by the couple in escrow. He later amended this motion to seek attorney's fees and other legal and equitable relief as warranted.

As part of a signed separation agreement, which pursuant to their request, the court approved and incorporated into the decree of dissolution of their marriage, the plaintiff and defendant agreed that they had two lines of credit. The one from First Republic Bank that was unsecured in the amount of $990,400 is in controversy on appeal. Paragraph 6.1 of the separation agreement provided that the parties owned three properties, located, respectively, in Greenwich, Vermont, and St. Barthelemy in the French West Indies. Paragraph 6.8 of the separation agreement provided that: "Upon the sale of any or all of the properties, all closing costs shall be paid 55 [percent] by the Wife and 45 [percent] by the Husband, including any mortgage balances, home equity line balances, real estate taxes, attorney fees, recording fees, typical and customary expenses for sale as determined in the jurisdiction where the property has been located."

After the Greenwich and Vermont properties were sold, the defendant filed a motion with the court to determine how $45,468.27 remaining in escrow with the closing attorney should be distributed in light of the defendant's claim that there was an unpaid balance incurred by him in costs of collateralizing the First Republic Bank loan. He later amended this motion to request that the court award attorney's fees and any other legal or equitable relief. The court found that: "As to the Republic line, the original principal balance has been paid, however, there remains an outstanding balance due in the amount of $26,774, together with interest to date, which balance is due mainly to the husband's efforts to extend this line prior to the sale of the Green-

wich property."

The defendant presented evidence that the plaintiff serially disrupted the sale of the properties "over a period of three and a half years." He offered evidence that because of these delays, he was required by First Republic Bank to secure the note and did so by mortgaging other property he owned. The court found that: "In viewing the Separation Agreement as a whole, in particular Articles 6.8 and 6.9, it is clear that the parties contemplated the payment of the loans from the ultimate sale of the marital properties as and when each sold. The parties also clearly agreed to divide both the principal, as well as the carrying costs, on a 55/45 basis. The husband was given the responsibility for maintaining these loans, with the understanding that he would be reimbursed for 55 [percent] of his expenditures. Given the considerable length of time it took to market and sell the properties, much of the delay attributable to the actions of the wife, this court finds that the husband's actions were reasonable and not beyond the contemplation of the parties at the time of the original agreement."

As the defendant noted in his brief, on appeal, the plaintiff does not claim that the court's finding with respect to her part in causing delay is "clearly erroneous." Instead her claim is that the court improperly found her responsible for a share of the costs and expenses of extending the First Republic Bank line of credit by granting it the security for its unsecured note that it demanded because of the delays in selling the properties, thus going beyond the plain language of the agreement. We generally review a case on the theory upon which it was tried and decided in the trial court. *Lashgari* v. *Lashgari*, 197 Conn. 189, 196, 496 A.2d 491 (1985). "It is equally true that we need not address other issues raised on appeal if the trial court has correctly decided *an* issue that is sufficient to sustain the judgment." (Emphasis in original.) Id.

In interpreting divorce judgments that incorporate written separation agreements, our courts look to contract principles. See *Hirschfeld* v. *Machinist*, 137 Conn. App. 690, 694–95, 50 A.3d 324, cert. denied, 307 Conn. 939, 56 A.3d 950 (2012). The court found that the defendant's actions in collateralizing the First Republic Bank note, as the bank requested, given the delays in its repayment, were not beyond the contemplation of the parties at the time of the original agreement. If the plaintiff had delayed the sale for one day, it is doubtful that either the parties or this court would be concerned. However, if she had delayed the sale for twenty years, requiring that the defendant undergo the additional expense of collateralizing the loan with other property, should it be the defendant's sole responsibility to pay that cost caused by the plaintiff's delay because there was no express contractual provision providing for

that? My point is that the length of the plaintiff's delay in fulfilling her performance of the separation agreement can reach a point where it deprives the defendant of what he had the right to expect under the contract's terms.

"[E]very contract carries an implied duty requiring that neither party do anything that will injure the other to receive the benefits of the agreement." (Internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 432, 849 A.2d 382 (2004). This principle is called the implied covenant of good faith and fair dealing.[1] The implied covenant of good faith and fair dealing exists in every contract, although not expressed, precisely because no written agreement can ever contemplate every possible way that a party's performance can injure the right of the other party to receive the benefits of the agreement. The separation agreement provided that three marital properties were to be sold, and that after the note obligation and expenses of sale were satisfied, the parties would split the net proceeds on a 55 percent to 45 percent basis. It presumed that each party would act in good faith and fairly in the performance of the contract. If the plaintiff did not so act, and was responsible for much of the three and a half year delay, causing the defendant expense, it would not be fair to require the defendant to bear that expense solely, because it would diminish the return he was entitled to receive under section 6.8 of the parties' separation agreement from the equity in these properties. Where a short delay would be de minimis, given a three and one half year delay here, the court held that the defendant's actions in collateralizing the note were not beyond the contemplation of the parties when they executed their separation agreement.

Paragraph 6.9 of the separation agreement provided that after payment of the closing costs set out in paragraph 6.8, the net proceeds remaining shall be divided 55 percent to the plaintiff and 45 percent to the defendant. From these net proceeds, the defendant was to pay First Republic Bank $445,680 and the plaintiff was to pay First Republic Bank $544,720. The plaintiff's position is that although the court found her responsible for delaying her performance in connection with the sale of the marital real estate, she should not be obligated to pay any of the additional collateralization costs incurred by the defendant. She maintains this position, even though the court found that after the execution of the contract, she had delayed her performance of that very contract, causing detriment to the defendant compensable in money damages.

Although the defendant-appellee did not brief the implied covenant of good faith and fair dealing, I believe that this doctrine correctly resolves the present case. Where the trial court has decided a particular case

properly, I know of no case which stands for the proposition that the prevailing party as appellee can "abandon" the grounds of the court's decision by some claimed lack of reference in its brief to the principle of justice that guided the court. A trial court's proper ratiocination is relevant and is entitled to review. Although the appellee has not briefed the covenant of good faith and fair dealing, there could be no surprise to the parties by its invocation because it is a covenant that is implied in all contracts, of which the trial judge is presumed to know and which exactly fits within the court's factual findings. Moreover, an aggrieved party appeals from the judgment of the trial court, which is what we review; the arguments advanced by counsel are not necessarily dispositive of this court's scope of review. A trial court cannot be ambushed if it is affirmed on the basis of the principles that guided its judgment, regardless of the arguments advanced by an appellee in defending that court's judgment. Any concern that the plaintiff-appellant has not had an opportunity to address this doctrine could be accommodated by giving both parties the opportunity to brief it before judgment enters on the appeal.

The trial court in the present case did not specifically mention the implied covenant of good faith and fair dealing in its decision. However, we have previously held that courts are presumed to know the law, unless something of record indicates otherwise. *Fenton* v. *Connecticut Hospital Assn. Workers' Compensation Trust*, 58 Conn. App. 45, 54–55, 752 A.2d 65, cert. denied, 254 Conn. 911, 759 A.2d 504 (2000). "Effect must be given to that which is clearly implied as well as to that which is expressed." (Internal quotation marks omitted.) *Lashgari* v. *Lashgari*, supra, 197 Conn. 197. In applying that prescription, our Supreme Court, in considering a distinct issue, has held that while a court must consider all of the criteria set forth in General Statutes § 46b-81 governing assignment of marital assets in dissolution proceedings at the time of entry the decree of divorce, it need not make explicit reference to them or make express findings as to each statutory factor. *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 137, 869 A.2d 164 (2005).

There is no good reason why a court should not also be excused from making particular reference to the principle of good faith and fair dealing in postjudgment proceedings, either. This is particularly so where the court has found that the plaintiff was responsible for much of the postjudgment delays in performance.[2] "The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application of a contract term." (Internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, supra, 269 Conn. 433. "Effect must be given to that which is clearly

implied as well as to that which is expressed." (Internal quotation marks omitted.) *Lashgari* v. *Lashgari*, supra, 197 Conn. 197. The plaintiff claims that the court improperly "added terms to the agreement." However, a court does not "add" an implied covenant, which is a part of every contract. Professor Corbin's treatise says succinctly: "Probably the most we can say is that 'implied' generally means 'not express', and that implication deals with things not expressly in the contract." 6 P. Linzer, Corbin on Contracts (Rev. Ed. 2010) § 26.1, p. 397.

It is well settled that a breach of the implied covenant of good faith and fair dealing is, in essence, a breach of contract—and, therefore, subject to the general rules governing the law of contracts. "The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . Traditionally, consequential damages include any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself." (Citation omitted; internal quotation marks omitted.) *Sullivan* v. *Thorndike*, 104 Conn. App. 297, 303–304, 934 A.2d 827 (2007), cert. denied, 285 Conn. 907, 908, 942 A.2d 415, 416 (2008).

This court addressed the specific issue of a party's breach of the implied covenant of good faith and fair dealing in *Landry* v. *Spitz*, 102 Conn. App. 34, 925 A.2d 334 (2007). In that case, we held that: "[W]hen one party performs the contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, there is a breach of the covenant of good faith and fair dealing, and hence, a breach of contract, for which damages may be recovered; reasonable or justified expectations, in turn, are to be determined by considering the various factors and circumstances that surround the parties' relationship and thereby shape or give contour to the expectations in the first instance. 23 S. Williston [Contracts (4th Ed. Lord 2002)] § 63:22, p. 514." (Internal quotation marks omitted.) *Landry* v. *Spitz*, supra, 44–45; see also *Atlantic Mortgage & Investment Corp.* v. *Stephenson*, 86 Conn. App. 126, 144, 860 A.2d 751 (2004) ("nothing in the contract [prohibits] an *award of damages* to the defendants for the plaintiff's breach of the implied covenant, which is an implicit provision in every contract" [emphasis in original]). Thus, "[a] claim for breach of good faith and fair dealing is . . . nothing more than a breach of contract claim and is analyzed like a claim for the breach of any other contractual duty." (Footnote omitted.) 17B C.J.S. 274–75, Contracts § 826 (2011). The appropriate remedy for a breach of the implied covenant of good faith and fair dealing, therefore, is money damages.

In *Landry*, this court further considered how it should review a trial court's decision to award damages for breach of the implied covenant of good faith and fair dealing. "[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . When, however, a damages award is challenged on the basis of a question of law, our review [of that question] is plenary." (Citation omitted; internal quotation marks omitted.) *Landry* v. *Spitz*, supra, 102 Conn. App. 49–50; see also *Spilke* v. *Wicklow*, 138 Conn. App. 251, 262, 53 A.3d 245 (2012), cert. denied, 307 Conn. 945, 60 A.3d 737 (2013).

The defendant-appellee did in fact offer evidence that the expenses associated with collateralization had not been paid off and his counsel argued before the trial court that the $26,744 is an unpaid balance and on appeal briefed the argument that the term "balance" means "any charges above and beyond the principal and interest already accounted for in the agreement. This would include the carrying costs and fees that the [defendant] incurred in extending the First Republic home equity line of credit pending the sale of the parties' property." The court rightly determined that "the husband is entitled to be reimbursed by the wife 55 [percent] of any interest and late fees that he expended for both the First Republic Bank and Citi lines of credit, and, in addition, the wife is responsible for 55 [percent] of any outstanding balances on either or both lines of credit." This would include the unpaid fees and expenses incurred by the defendant-husband to extend the First Republic Bank loan.

In analyzing the foregoing, our law suggests that: (1) the breach of the implied covenant of good faith and fair dealing is one species of a breach of contract; (2) the ordinary remedy for breach of contract is money damages; and (3) the trial court has broad discretion to fashion the appropriate measure of damages. Applying this law to the present case, I conclude that upon finding the plaintiff was responsible for much of the delay, the court did not abuse its discretion in awarding damages to the defendant for the plaintiff's failure to timely effectuate the sale of the couple's property.[3]

Did the written agreement concerning the sale permit the plaintiff to neglect or delay to close the sale contrary to the defendant's justified expectations and pass the costs of the attendant delay solely to the defendant? The court found that it did not. I would affirm the court's judgment.

I respectfully dissent.

[1] This principle provides: "Every contract imposed upon each party a duty of good faith and fair dealing in its performance and its enforcement." 2 Restatement (Second) Contracts, § 205 p. 99 (1981). Our Supreme Court

has applied this doctrine in a variety of contractual relationships and has observed that "[t]he Restatement (Second) of Contracts similarly recognizes an implied covenant of good faith and fair dealing in every contract without limitation." *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 566, 479 A.2d 781 (1984).

The commentary to § 205 of the Restatement (Second) of Contracts provides: "[B]ad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." 2 Restatement (Second), supra, § 205, comment (d), pp. 100–101.

Our Supreme Court has held that "the covenant of good faith and fair dealing only requir[es] that neither party [to a contract] do anything that will injure the right of the other to receive the benefits of the agreement . . . ." (Internal quotation marks omitted.) *Capstone Building. Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 795, 67 A.3d 961 (2013).

[2] Our Supreme Court has, in a variety of circumstances, looked to the merits of matters, even when magic words, labels, or talismanic phrases, were not invoked by a court or a party. For some instances that are illustrative, but not exhaustive, see, e.g., *Gambardella* v. *Apple Health Care, Inc.*, 291 Conn. 620, 637, 969 A.2d 736 (2009) ("actual malice" for finding of liability for libel or slander); *State* v. *Robinson*, 227 Conn. 711, 731, 631 A.2d 288 (1993) (inferred compliance with balancing test for prejudicial effect of evidence); *Struckman* v. *Burns*, 205 Conn. 542, 555, 534 A.2d 888 (1987) (formulaic words not necessary for admission of expert witness's medical opinions).

[3] The plaintiff also claims that the court improperly considered parol evidence to vary the written terms of the agreement and that the court impermissibly considered evidence of events occurring after the execution of the agreement. I am not persuaded. Evidence of a party's performance always occurs after a party's execution of an agreement, and it is relevant if it consists of delays in performance causing loss to another party to the agreement.

---