******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CAROLINE HIRSCHFELD *v.* ROBERT B. MACHINIST
## (AC 39772)

Keller, Bright and Norcott, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court rendered on certain postjudgment motions filed by the plaintiff. The plaintiff had filed a motion for order that requested that the trial court order the defendant to divide certain assets identified in the defendant's financial affidavit and a motion for contempt that alleged that the defendant had failed to pay fully his alimony obligation for a certain year. Thereafter, the plaintiff filed a motion for order in which she claimed that the defendant unilaterally had reduced his alimony payment by relying on a certain provision in the separation agreement, which provided, inter alia, that the defendant shall pay a reduced percentage of alimony after a certain step-down date, and that the defendant had misapplied the language of that provision in light of the mandatory minimum alimony obligation set forth in another provision. The plaintiff requested the trial court to order the defendant to pay an arrearage allegedly owed to her. Following an evidentiary hearing on remand from prior appeals to this court, the trial court denied in part the plaintiff's motion for order seeking the defendant to divide certain assets, denied in part the plaintiff's motion for contempt, and denied the plaintiff's motion for order concerning the defendant's alimony obligations, and the plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on her claim that the trial court improperly failed to find the defendant in contempt when it denied in part her motion for order regarding the division of the defendant's interest in various investments and limited partnerships, which was based on her claim that once the court determined that the defendant had underpaid the plaintiff with respect to her share of the distributions from certain assets, it should have found that the defendant's conduct was wilful: although the separation agreement provided that the parties must divide in kind the passive investments and limited partnerships shown in the defendant's financial affidavit, the plaintiff did not seek a finding of contempt on the ground that the in kind division did not occur and she agreed that such a division was not possible, and although the plaintiff argued that the court should have found the defendant in contempt because he failed to distribute properly to the plaintiff her share of the income from the assets pursuant to a modified agreement that the parties had reached after the court rendered the dissolution judgment, the court never incorporated the parties' modified agreement into its dissolution decree or any other court order, and, thus, that modified agreement could not have been the basis for a finding of contempt; moreover, because it was not possible for the defendant to comply with the property division terms of the separation agreement, the defendant could not have been found in contempt.

2. The plaintiff's claim that the trial court erred by not finding the defendant in contempt for underpaying alimony for a certain year was unavailing; even though the trial court found that there was no reasonable basis for the defendant to have made the deduction that resulted in the underpayment, the plaintiff ignored the court's additional findings that the defendant's argument was made in good faith and was not frivolous, and that neither party completely understood the court's orders, and the plaintiff failed to point to anything in the record that undermined or was inconsistent with those findings.

3. The trial court did not err in determining that two provisions in the separation agreement were ambiguous and considering extrinsic evidence when it denied the plaintiff's motion for order concerning the defendant's alleged underpayment of alimony: the defendant's application of the provision that provided for a reduced percentage of alimony after the step-down date resulted in a lower alimony payment than the minimum alimony payment amount specified in the other relevant

provision of the separation agreement, that inconsistency in language between the two provisions of the separation agreement created an ambiguity in that contract, both parties offered reasonable interpretations to resolve the inconsistency in the language of those provisions, and although the plaintiff claimed that the minimum alimony payment provision was clear and unambiguous, her claim was completely undermined by the fact that, during the trial and appellate proceedings in the present action, she had offered two very different interpretations of the two provisions; moreover, the extrinsic evidence relied on by the trial court was properly used to explain an ambiguity that existed in the separation agreement and, thus, that evidence was properly considered by the court even though the separation agreement contained a merger clause and was a fully integrated contract.

4. The plaintiff's claim that the trial court abused its discretion in failing to award her attorney's fees on any of her motions was unavailing; the plaintiff's argument was based on her claim that the defendant should have been held in contempt, but because this court concluded that the trial court did not err in declining to find the defendant in contempt, there was no basis to conclude that the court abused its discretion by not awarding attorney's fees to the plaintiff.

Argued on January 29—officially released April 24, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Stanley Novack*, judge trial referee; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Shay, J.*, denied the plaintiff's motion for order seeking the defendant to divide certain assets and issued certain other postjudgment orders and granted the plaintiff's motion for contempt, and the plaintiff filed separate appeals to this court, which reversed the judgment in part and remanded the case for further proceedings in the first appeal, and reversed the judgment and remanded the case for further proceedings in the second appeal; following an evidentiary hearing on remand, the court, *Colin, J.*, denied in part the plaintiff's motion for order seeking the defendant to divide certain assets, denied in part the plaintiff's motion for contempt, and denied the plaintiff's motion for order concerning the defendant's alimony obligations, and the plaintiff appealed to this court. *Affirmed.*

*Kenneth A. Votre*, for the appellant (plaintiff).

*Kenneth J. Bartschi*, with whom were *Dana M. Hrelic* and, on the brief, *Melissa Needle*, for the appellee (defendant).

*Opinion*

BRIGHT, J. The plaintiff, Caroline Hirschfeld, appeals from the judgment of the trial court rendered on three postjudgment motions filed by the plaintiff in this dissolution action. On appeal, the plaintiff claims that the court erred by: (1) failing to find the defendant, Robert B. Machinist, in contempt for not complying with the property division terms of the separation agreement; (2) failing to find the defendant in contempt for underpaying alimony in the same year that their marriage had been dissolved; (3) determining that the parties' separation agreement was ambiguous and improperly considering extrinsic evidence in violation of the parol evidence rule; and (4) failing to award the plaintiff attorney's fees on her motions. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal.[1] On February 2, 2007, the parties' twenty-nine year marriage was dissolved pursuant to a detailed separation agreement negotiated by the parties with the assistance of counsel. Two provisions of that agreement are at the heart of this appeal. First, paragraph 3.1 of the separation agreement addresses the defendant's obligation to pay alimony and child support to the plaintiff. It provides: "During the joint lives of the parties the [defendant] shall pay unallocated alimony and child support to the [plaintiff] according to the following schedule: a. 40 [percent] of the [defendant's] first $400,000 of earned income in each calendar year; provided, however, if alimony is still being paid by the [defendant] as of *January 1, 2014* this percentage shall be reduced to 32.5 [percent]. b. 30 [percent] of the [defendant's] earned income from $400,001 to $900,000 in each calendar year. c. 20 [percent] of the [defendant's] earned income from $900,001 per year to $1,500,000 in each calendar year. d. 0 [percent of] the [defendant's] earned income that exceeds $1,500,001 in each calendar year. e. The percentages recited in this Paragraph 3.1 are non-modifiable by the parties or the court, except as provided in Paragraph 3.2 (d).[2] f. Minimum alimony under [paragraph] 3.1 (a) shall be $160,000 per year." (Emphasis in original; footnote added.) Although paragraph 3.1 is typewritten, subparagraph (f) was handwritten into the separation agreement and initialed by both parties.

The second provision of the separation agreement at issue is paragraph 6.15, which provides: "The [defendant] and the [plaintiff] shall divide in kind the passive investments or limited partnerships shown in Section [III (G)] of the [defendant's] December 5, 2006 financial affidavit [(financial affidavit)]. Each of the parties shall receive 50 [percent] of such investments and limited partnerships. Each of the parties shall be required to pay out of their separate assets any capital calls or clawbacks required as a consequence of such party's

ownership of such passive investments or limited partnerships."

Section III (G) of the defendant's financial affidavit lists eleven items under the heading "Passive Investments/Limited Partnerships Titled in Robert Machinist's Name." Five of those items are limited partnerships of which the defendant listed an ownership interest of less than 1 percent.

On September 18, 2008, the plaintiff filed a motion for order, seeking an order that the defendant divide the assets identified in § III (G) of the defendant's financial affidavit. The trial court, *Shay, J.*, denied this motion on August 24, 2009, without completing the hearing that began on August 4, 2009. On appeal, this court reversed the judgment rendered on that motion and remanded the case for a full evidentiary hearing. *Hirschfeld* v. *Machinist*, 131 Conn. App. 352, 359–61, 29 A.3d 159 (2011).

On remand, the trial court, *Colin, J.*, conducted an evidentiary hearing on the plaintiff's motion. In her motion, the plaintiff alleged that "the [defendant] has failed and refused to divide said . . . passive investments and limited partnerships." She sought an order requiring such a division, holding the defendant "financially responsible for any economic loss incurred by the [p]laintiff due to [the defendant's] failure" to divide the assets, awarding her attorney's fees, and fining the defendant $1000. Following the evidentiary hearing, the court found that the plaintiff had failed to prove that the defendant had "refused" to divide the assets. The court found, instead, that the defendant had failed to divide the assets because it was not possible for him to do so pursuant to the various partnership agreements. In particular, the court found that "[i]t is undisputed that the assets that are the subject of this motion, and that are listed on the defendant's financial affidavit at § [III (G)], could not be divided in kind as required under the language of the separation agreement." The court further noted that the parties, with the assistance of their counsel, had "essentially agreed that [because] title to the assets could not be transferred to the plaintiff, the defendant would instead pay to the plaintiff [one half] of what he received from the assets. It took years for this to be accomplished due to the continued, never-ending saga of these parties [postdissolution], involving many disputes arising under the terms of [the separation] agreement. The defendant did not wrongfully withhold funds from the plaintiff."

The court found that, from the date of the dissolution through December 31, 2013, the defendant principally had complied with the parties' modified agreement regarding the division of assets but had underpaid the plaintiff by $9602.62. The court granted the plaintiff's motion in part and ordered the defendant to pay the

plaintiff $9602.62 but declined to award her any interest or attorney's fees. The court explained that it "cannot order the defendant to do something that is a clear legal impossibility. . . . The parties have essentially worked out another way to accomplish what they intended. There is no legal or factual basis to grant much of the relief the plaintiff seeks other than to order the defendant to pay to the plaintiff the remaining amount due in order to effectuate the judgment."

At the same hearing, Judge Colin also heard testimony and argument related to the motion for contempt filed by the plaintiff on September 17, 2010, which alleged that the defendant had failed to pay fully his alimony obligation for 2007. Previously, on May 31, 2011, Judge Shay granted the plaintiff's motion and awarded her $36,959 in unpaid alimony and attorney's fees in the amount of $17,731.97. Nevertheless, the plaintiff appealed from the judgment because she believed that she was owed significantly more in alimony but could not determine the full amount of the underpayment because the court restricted her access to certain documents related to the defendant's earned income. *Hirschfeld* v. *Machinist*, 137 Conn. App. 690, 691–92, 50 A.3d 324, cert. denied, 307 Conn. 939, 56 A.3d 950 (2012). This court agreed, reversed the judgment of the trial court, and remanded the case for further proceedings. Id., 696.

On remand, Judge Colin conducted a full evidentiary hearing after the plaintiff was provided access to the documents she sought. On the basis of the evidence, the court found that the defendant had underpaid alimony to the plaintiff in 2007 in the amount of $80,335.50. The underpayment was the result of the defendant reducing his 2007 income by the $150,025 loss indicated on his 2007 Schedule K-1 that was associated with his approximately 12.15 percent interest in a limited liability company. Although the court found that there was no reasonable or factual basis for the defendant to make such a deduction, it held that "the evidence does not clearly and convincingly establish that the defendant's failure to pay all of what he owed rose to the level of a wilful and intentional violation of the court's orders. Quite frankly, after hearing the parties testify at length regarding a number of aspects of their separation agreement, the court is left with the distinct impression that neither party completely understands the language of the [court's current] orders. [Although] the court has rejected the defendant's claim that a loss should be applied against his earnings in 2007, the argument was not frivolous and was made in good faith." Consequently, the court granted in part the plaintiff's motion, and ordered the defendant to pay the plaintiff $80,335.50, plus simple interest at the rate of 2 percent per year from October 15, 2008. The court concluded that no finding of contempt was warranted and denied the plaintiff's request for attorney's fees.

Finally, the court considered a motion for order filed by the plaintiff on May 29, 2014, in which she claimed that the defendant, relying on the language of paragraph 3.1 (a) of the separation agreement, unilaterally reduced his alimony payment from 40 percent to 32.5 percent of the first $400,000 of his earned income. Thus, in February, 2014, the defendant paid the plaintiff $10,833.33 instead of $13,333.33 that he had paid each month since the judgment of dissolution. The plaintiff claimed that the defendant misapplied the language of paragraph 3.1 (a) in light of the mandatory minimum alimony obligation in paragraph 3.1 (f). The plaintiff requested that the court order the defendant to pay the arrearage owed to her. She also requested an award of attorney's fees. Finally, she requested that, if the court determined that the defendant's failure to pay was wilful, the defendant "be adjudged in contempt and punished."

Although the plaintiff argued that the language of paragraph 3.1 is clear and unambiguous, the defendant argued that the same language is ambiguous and requested permission to offer extrinsic evidence as to what the parties intended when they agreed to the language of paragraph 3.1. The plaintiff objected to the admission of extrinsic evidence. The court agreed with the defendant and allowed the defendant and his former attorney to testify as to the interpretation of that paragraph. The court credited the testimony of the two witnesses and found that "the minimum alimony payment of $160,000 per year was intended to apply only to the period of time from the date of the [dissolution] until the 'step-down' date of January 1, 2014. It is not reasonable to read the [separation] agreement any other way. It is not reasonable to believe that the parties intended that, after January 1, 2014, the defendant was still required under [paragraph] 3.1 (a) to pay a minimum of $160,000 when that same article specifically says that payments 'shall be reduced to 32.5 [percent]' of the first $400,000 of income, which is $130,000." Consequently, the court denied the plaintiff's motion in its entirety.

This appeal followed. We will address each of the plaintiff's claims in turn, starting with the earliest filed motion.

I

The plaintiff first claims that the court improperly failed to find the defendant in contempt when it granted in part her motion for order regarding the division of the defendant's interest in various investments and limited partnerships. According to the plaintiff, once the court determined that the defendant had underpaid the plaintiff by $9602.62 as her share of the distributions from those assets, it should have concluded that "[t]he only reasonable explanation for why the [p]laintiff was not

given the correct share of the [d]efendant's distribution is that the [d]efendant wilfully and intentionally did not tender the correct sum to her." The defendant argues that he could not be found in contempt because: (1) the defendant's division of income from the assets in question did not violate any order of the court; and (2) the defendant substantially complied with any putative order. We agree with the defendant.

We begin with the applicable standard of review and legal principles. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . A contempt judgment cannot stand when, inter alia, the order a contemnor is held to have violated is vague and indefinite, or when the contemnor, through no fault of his own, was unable to obey the court's order. . . .

"Consistent with the foregoing, when we review such a judgment, we first consider the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . .

"Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 379–80, 107 A.3d 920 (2015). "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [party] were in contempt of a court order. To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *McGuire* v. *McGuire*, 102 Conn. App. 79, 82, 924 A.2d 886 (2007).

We start our review with the order that the plaintiff claims was violated. The plaintiff claims that the defendant violated paragraph 6.15 of the separation agreement, which was incorporated into the court's judgment of dissolution and is, therefore, an order of the court. Paragraph 6.15 requires the parties to "divide in kind the passive investments and limited partnerships shown in Section [III (G)] of the [defendant's] December 5, 2006 financial affidavit." Significantly, the plaintiff did not seek a finding of contempt because the "in kind" division did not occur. In fact, she agrees that such a division was not possible. Instead, the plaintiff argues that the court should have found the defendant in contempt because he failed to distribute properly to the plaintiff her share of the *income* from the assets pursu-

ant to the agreement the parties reached, following the court's judgment of dissolution, when they realized that an "in kind" division was not possible. The court, however, never incorporated the parties' modified agreement regarding distribution of income from the § III (G) assets into its dissolution decree, or any other court order. Consequently, the plaintiff's claim fails because breaching the modified agreement, which was not an order of the court, cannot be the basis for a finding of contempt.

Furthermore, the court specifically found, and the plaintiff does not dispute, that it was impossible for the defendant to comply with paragraph 6.15. "The inability of a contemnor to obey a court order through no fault of [his] own is a defense to a claim of contempt. . . . In other words, the act for which the penalty was imposed cannot constitute contempt if the actor was unable to obey the order." (Citations omitted.) *Tatro* v. *Tatro*, 24 Conn. App. 180, 186, 587 A.2d 154 (1991).

For these reasons, the court properly declined to find the defendant in contempt even though it ordered him to pay the plaintiff an additional $9602.62, representing her share of the income from the § III (G) assets.

II

The plaintiff next claims that the court erred by not finding the defendant in contempt for underpaying alimony in 2007. The plaintiff argues that because the court found that "the defendant failed to establish a reasonable factual or legal basis, under the circumstances of this case, and under the specific language of the [separation] agreement, for his exclusion from gross income of an ordinary income loss in the amount of $150,025," it was an abuse of discretion not to find the defendant in contempt. The plaintiff argues that such a conclusion is further compelled because the court specifically found the defendant's explanation for the deduction "not credible." The defendant argues that the plaintiff's argument is based on a selective reading of the court's opinion and ignores the court's finding that the defendant's argument was not frivolous and was made in good faith. We agree with the defendant.

As previously set forth in part I of this opinion: "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [party] were in contempt of a court order. To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *McGuire* v. *McGuire*, supra, 102 Conn. App. 82. The defendant is correct that the plaintiff ignores significant findings of the court. Although the court rejected the defendant's argument as not having a reasonable basis, it nonetheless concluded that the argument was made

in good faith and was not frivolous. Furthermore, after hearing the testimony of both parties, the court concluded that neither party completely understood the current court orders. The plaintiff points to nothing in the record that undermines or is even inconsistent with the court's findings. Consequently, there is no basis to conclude that the court's findings were clearly erroneous or that the court abused its discretion when it refused to find the defendant in contempt.

### III

The plaintiff next claims that the court erred by determining that paragraph 3.1 of the separation agreement is ambiguous when it denied her May 29, 2014 motion for order. The plaintiff argues that the court "improperly considered parol evidence in interpreting the [s]eparation [a]greement, and . . . the court . . . ignored the plain language of [paragraph] 3.1 (f) and strained the language, interpreting it to say something that it simply does not." According to the plaintiff, because the separation agreement contains a merger clause, and previously was found by this court to be a fully integrated agreement, the court should not have considered parol evidence that contradicts the writing. The plaintiff further argues that it was improper for the court to consider parol evidence because paragraph 3.1 (f) is clear and unambiguous. The plaintiff does not challenge the court's conclusion, based on the parol evidence, regarding the parties' intent.

In response, the defendant argues that paragraph 3.1 (f) cannot be read in isolation but must be read in the context of paragraph 3.1 as a whole. The defendant argues that, in context, paragraph 3.1 (f) is not clear and does not unequivocally express the intent of the parties. Consequently, he argues, the court correctly determined that the provision is ambiguous and properly considered parol evidence. The defendant argues further that, because the evidence relied on by the court did not contradict the terms of the separation agreement, the evidence was not precluded by the separation agreement's merger clause or by the fact that the separation agreement is a fully integrated contract. We agree with the defendant.

We begin our analysis by setting forth the applicable standard of review. "It is well established that a separation agreement, incorporated by reference into a judgment of dissolution, is to be regarded and construed as a contract . . . . Accordingly, our review of a trial court's interpretation of a separation agreement is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . If a contract is unambiguous within its four corners, the determination of

what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Citations omitted; internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, supra, 137 Conn. App. 694–95.

"The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is de novo." (Internal quotation marks omitted.) *Meridian Partners, LLC* v. *Dragone Classic Motorcars, Inc.*, 171 Conn. App. 355, 364, 157 A.3d 87 (2017). "A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, supra, 315 Conn. 383–84.

"The parol evidence rule prohibits the use of extrinsic evidence to vary or contradict the terms of an integrated written contract. . . . The rule does not forbid the presentation of parol evidence, but prohibits the use of such evidence to vary or contradict the terms of the contract. . . . When a court is faced with an issue of the construction of a contract containing inconsistent clauses, the parol evidence rule does not apply. All relevant evidence is admissible on the issue of contract interpretation . . . . The only limitation is that the asserted meaning must be one to which the language of the writing read in context, is reasonably susceptible in the light of all of the evidence introduced. . . . The operative question becomes whether parol evidence is offered to contradict the writing or to aid in its interpretation." (Citations omitted; internal quotation marks omitted.) *Foley* v. *Huntington Co.*, 42 Conn. App. 712,

733–34, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996).

"[W]hen the words used in the contract are uncertain or ambiguous, parol evidence of conversations between the parties or other circumstances antedating the contract may be used as an aid in the determination of the intent of the parties which was expressed by the written words." *Kronholm* v. *Kronholm*, 16 Conn. App. 124, 131, 547 A.2d 61 (1988).

Paragraph 3.1 (f) of the separation agreement provides that "[m]inimum alimony under [paragraph] 3.1 (a) shall be $160,000 per year." The plaintiff argues that this language clearly and unambiguously obligates the defendant always to pay the plaintiff at least $160,000 each year for alimony regardless of his income or any other requirements of the separation agreement. The plaintiff, however, reads paragraph 3.1 (f) in isolation, which is incorrect for two reasons. First, as previously noted, a "contract must be viewed in its entirety, with each provision read in light of the other provisions . . . ." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, supra, 315 Conn. 384. Second, paragraph 3.1 (f) specifically references paragraph 3.1 (a), and, therefore, the two provisions must be read together. When paragraph 3.1 (f) is read in conjunction with paragraph 3.1 (a), the internal inconsistency readily is apparent.

Paragraph 3.1 (a) obligated the defendant to pay 40 percent of the first $400,000 of his annual income as alimony to the plaintiff until December 31, 2013. As of January 1, 2014, the percentage to be applied to the first $400,000 of income is reduced to 32.5 percent, or $130,000. The question for the court was how to interpret the *minimum* alimony requirement of $160,000 in paragraph 3.1 (f) in light of the explicit language in paragraph 3.1 (a) reducing the *maximum* payment the defendant would have to make on his first $400,000 of income as of January 1, 2014, to $130,000. The court found that the separation agreement was ambiguous "due to the inconsistency between subparagraphs (a) and (f) of [paragraph] 3.1, as each party initially offered a seemingly plausible explanation for their respective positions."

The plaintiff argued before the trial court that the language of paragraph 3.1 was intended to always maintain minimum alimony in the amount of $160,000, and that the language in paragraph 3.1 (a) reducing the percentage from 40 percent to 32.5 percent "only changed the amount of alimony paid on income in excess of $400,000." By way of example, the plaintiff argued that if the defendant made $550,000 in a calendar year after January 1, 2014, he "would pay 32.5 [percent] on the first $400,000 ($130,000) and 30 [percent] of the next $150,000 ($45,000), for a total of $175,000." Prior to January 1, 2014, the same $550,000 in income would have resulted in the defendant paying alimony of

$205,000. Thus, according to the plaintiff, the "step-down" language in paragraph 3.1 (a) would not be superfluous because it still confers the intended benefit on the defendant of reducing his alimony obligation, and paragraph 3.1 (f) simply ensured that the plaintiff would always receive at least $160,000. The defendant argued that paragraph 3.1 (f) was intended only to apply until January 1, 2014, when the percentage due on the first $400,000 of income was reduced to 32.5 percent.

After hearing testimony from witnesses involved in the negotiation of the separation agreement, the court accepted the defendant's proposed interpretation. The court concluded that the plaintiff's proposed reading of paragraph 3.1 was not reasonable because it created a minimum alimony obligation under paragraph 3.1, even though the language of paragraph 3.1 (f) is not that broad. "Notably, [paragraph] 3.1 (f) expressly notes that the minimum alimony of $160,000 per year is *under paragraph 3.1 (a)*, the paragraph that deals with the defendant's first $400,000 of earned income; [paragraph] 3.1 (f) does not say that the minimum alimony is under all of [paragraph] 3.1 in its entirety." (Emphasis in original). The court then used the plaintiff's example to show that the plaintiff's interpretation would result in the defendant paying varying percentages of the first $400,000 of his income depending on how much he made. For example, under the plaintiff's interpretation, if the defendant earned exactly $400,000, he would pay 40 percent of his income, as opposed to 32.5 percent on the first $400,000 of his income if he earned $550,000, as in the plaintiff's example. The court concluded that the language of the separation agreement did not support such an interpretation and that the evidence adduced at trial did not support a finding that the parties ever intended such a result. Consequently, the court held that "the parties intended the minimum alimony under [paragraph] 3.1 (f) to apply only to the period before the 'step-down' on January 1, 2014. There is no provision in the [separation] agreement for a minimum alimony payment after that date."

Because the plaintiff does not claim that the court's finding as to the parties' intent, based on the language of the separation agreement and the parol evidence, was clearly erroneous, the only question for this court is whether the trial court erred in determining that the separation agreement was ambiguous and, thereafter, improperly considered parol evidence. We conclude that the court properly determined that the separation agreement was ambiguous.

The inconsistency in language between paragraphs 3.1 (a) and 3.1 (f) created ambiguity in the contract. See *Thoma* v. *Oxford Performance Materials, Inc.*, 153 Conn. App. 50, 60, 100 A.3d 917 (2014) ("[i]rreconcilable inconsistent provisions have been treated by this court and our Supreme Court as creating an ambiguity within

the contract"). Furthermore, both parties offered reasonable interpretations to resolve the inconsistency in the language of paragraphs 3.1 (a) and 3.1 (f). In fact, the plaintiff's claim that the language of paragraph 3.1 (f) is clear and unambiguous is completely undermined by the fact that, during the trial and appellate proceedings in the present case, she has offered two very different interpretations of that paragraph. Before the trial court, she argued that paragraphs 3.1 (a) and 3.1 (f) could be harmonized as set forth in the illustration that she presented to the court. Then, perhaps recognizing the same weakness in her argument that the trial court recognized, the plaintiff has offered a totally different interpretation on appeal. Instead of arguing that the two provisions should be read together, the plaintiff now argues that "[p]aragraph 3.1 (f) *supplants* paragraph 3.1 (a) because that is what it says it does." (Emphasis added.) In support of her most recent interpretation, the plaintiff offers a new illustration that leads to a markedly different result than does the example she offered before the trial court.[3] By offering her own competing interpretations of paragraph 3.1, the plaintiff effectively has demonstrated that the trial court was correct in determining that the separation agreement is ambiguous, and, thereafter, properly admitted parol evidence to determine the parties' intent.

The fact that the separation agreement is an integrated contract and contains a merger clause does not alter this conclusion. As noted, parol evidence, including conversations of those involved in drafting the contract, "may be used as an aid in the determination of the intent of the parties which was expressed by the written words." *Kronholm* v. *Kronholm*, supra, 16 Conn. App. 131; see also *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 687, 72 A.3d 1121 (2013) ("[p]arol evidence may be admissible to explain ambiguities that exist in the contract" [internal quotation marks omitted]). Although the plaintiff contends that the court used parol evidence "to vary or contradict" paragraph 3.1 (f) of the parties' separation agreement, this contention is inaccurate. The court used the parol evidence, including the testimony of the defendant and his former attorney, to resolve the inconsistency between paragraphs 3.1 (a) and 3.1 (f). Thus, the court properly considered the parol evidence to explain an ambiguity that existed in the separation agreement. See *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, supra, 687.

Because we conclude that paragraph 3.1 of the separation agreement is ambiguous, the court was required to resolve the ambiguity by considering extrinsic evidence and making factual findings as to the parties' intent. Consequently, we conclude that the court properly considered parol evidence in order to determine the parties' intent.

## IV

Finally, the plaintiff claims that the court abused its discretion in failing to award her attorney's fees on any of her motions. This claim requires little discussion. The plaintiff's argument is premised on her preceding claims that the defendant should have been held in contempt pursuant to the three motions before the court because his conduct was wilful and intentional. In short, because we conclude that the trial court did not err in declining to find the defendant in contempt of court, there is no basis to conclude that the court abused its discretion by not awarding the plaintiff attorney's fees.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The parties have been in almost continuous litigation since their marriage was dissolved. Between March 6, 2007, and June 22, 2017, more than 300 entries were added to the case docket, including more than 150 posttrial motions, and the parties have been before this court on four other occasions and before our Supreme Court twice. We have limited our discussion of the procedural history of the parties' dispute to that which relates to the issues now before us.

[2] Neither party claims that the exception in paragraph 3.2 (d) was at issue before the court or is relevant to this appeal.

[3] Moreover, the plaintiff's new interpretation would render paragraph 3.1 (a) superfluous. Such an interpretation is contrary to the fundamental principle that "in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *EH Investment Co.*, *LLC* v. *Chappo, LLC*, 174 Conn. App. 344, 358, 166 A.3d 800 (2017).

[4] To the extent the plaintiff also is claiming that, in the absence of a finding of contempt, the failure to award attorney's fees was an abuse of discretion because it undermines the court's previous financial orders, we agree with the defendant that such a claim was not raised before the trial court. Accordingly, we decline to review it for the first time on appeal. See *DiGiuseppe* v. *DiGiuseppe*, 174 Conn. App. 855, 864, 167 A.3d 411 (2017) ("[w]e will not promote a Kafkaesque academic test by which [a trial judge] may be determined on appeal to have failed because of questions never asked of [him] or issues never clearly presented to [him]" [internal quotation marks omitted]).