[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband commenced this action for a dissolution of marriage on the ground of irretrievable breakdown, by complaint returnable March 14, 1995. He also sought a property settlement and other relief, as on file. The defendant wife admitted the allegations. In her cross complaint, she too seeks a dissolution on the same ground, together with custody and support of the parties' minor children, alimony, and other relief, as on file.
At trial, each spouse testified and submitted financial affidavits, child support and arrearage guideline worksheets and written proposed orders and claims for relief. Numerous documentary materials, including wage and earning statements, tax returns and appraisal reports were introduced into evidence, and counsel made oral argument.
From the evidence, I find as follows.
The parties were married April 2, 1983, at Norwich, Connecticut. The husband has resided continuously in this state for at least one year prior to the date of the complaint. Only two minor children were born to the wife since the marriage, both of whom are issue of the marriage: Genyce D. Means, born July 27, 1980, and Daniel D. Means, born March 15, 1988. Neither spouse or children are recipients of public assistance. All statutory stays have expired. The court has jurisdiction. CT Page 4010-LL
The husband is 45 years old, a high school graduate with two years of college, and a CLU designation. He is in good health. He has worked since 1979 in the life insurance industry. In 1992, he left his sales manager job at John Hancock due to an office closing. He now works as a salesman for Allstate. In 1995, he earned approximately $35,000 gross income, including bonuses, or about $673 per week. His gross annual earnings in 1994 were $46,625; in 1993, $44,086. He has health insurance benefits and pension and profit sharing plans available through his employment.
The wife is 36, a high school graduate, with two years of bible school. She recently was ordained as a minister. She had a real estate agent's license for a brief period. She allowed it to lapse. She suffers from hypothyroidism for which she takes medication daily, and recently underwent a hysterectomy. Her condition does not appear to affect her ability to work.
In the early years of the marriage, she provided day care in her home for other people's children. She is now employed as a part-time church administrator and part-time minister. She earns $285 per week gross, $251 per week net; in addition, she receives $69 per week rental income.
The parties met when the wife was 15. She was pregnant by another man; the husband accepted the child as his own, and they enjoy a good father-daughter relationship. That daughter left the family dwelling and has moved in with the husband.
The husband essentially claims that the wife had excessive spending habits, no communication with him and a close relationship with a woman friend which caused the shattering of the marriage. The husband believes that the relationship is lesbian; the wife heatedly denies it. Whatever the bond was, it contributed to the marital destruction. The wife claims that he intimidated her, that he was domineering and controlling, that she couldn't discuss anything with him on a rational basis, and that her woman friend was merely that, a friend. The wife attempted to obtain a restraining order against the husband, which was denied after a hearing. She believes that each is 50 percent responsible for the marital breakdown. CT Page 4010-MM
For a time, the parties slept in separate rooms. They participated in counseling, which proved unsuccessful. The husband left the marital dwelling in the spring of 1995.
It is abundantly clear that the marriage has irretrievably broken down. I have considered the credibility of the parties, their attitude, conduct and demeanor, and conclude that a somewhat larger portion of the responsibility for the shattering of the parties' marriage must rest with the wife.
The parties have accumulated the following described assets, as disclosed on their respective financial affidavits.
Their jointly-owned marital dwelling, 95 Starr Street, Norwich, Connecticut, which I find has a value of $116,000, but an equity of no more than $12,000-$13,000 after subtracting the mortgage balance of $99,000 and past due property taxes of about $4,000. The husband owned a home prior to the marriage which was sold; the proceeds of about $30,000 were used for a down payment on the present marital home, furniture and furnishings.
The husband describes on his financial affidavit a profit sharing plan with $4,700 with Allstate; a pension plan of $12,301 with Allstate, not fully vested, and his John Hancock pension plan which has a present value of $31,336. He also lists a 1994 Pontiac which he drives worth $10,000 with no equity and a 1991 Hyundai worth $4,000 which the wife drives. They report no bank accounts or other liquid funds, and modest amounts of tangible personalty.
The husband was the principal breadwinner during the marriage, and his income accounted for the lion's share of the accumulation of the marital assets. Although the wife worked throughout the marriage, her income was never substantial. The husband's earnings and earning capacity always were and still are greater than that of the wife.
The wife was the homemaker and primary care giver to the children. While the husband's monetary contributions to the marriage were greater than the wife's, her nonmonetary contributions were greater than his.
I make the following additional findings. The parties CT Page 4010-NN successfully completed the Parenting Education Program, General Statutes § 46b-69b. The couple entered into an agreement that they be awarded joint legal custody of their two minor children, with physical custody in mother and reasonable rights of visitation to father. They also agreed that the father would maintain his present job-related health insurance for the children, and that the parents would equally share the unreimbursed, uncovered health-related expenses for the children. I find this agreement fair and equitable under the circumstances and in the best interests of the children, and I approve it.
The husband in 1992 and 1993 withdrew in excess of $35,000 from his pension/profit sharing plans. I find it established that a significant portion of the net proceeds of these withdrawals (after income taxes and surrender charges) were used to pay the wife's credit card charge account obligations. However, the husband was a willing participant in this improvident dissipation of funds and must bear a portion of the responsibility for it.
I also find that the wife refused to cooperate and join with the husband in a joint federal income tax return for 1994, and that this resulted in the imposition of $1,600 of unnecessary additional income taxes upon the husband.
Although I find credible that the husband's 1993 state income tax refund was intercepted, there is insufficient evidence that the wife was responsible for the tax liability the refund was applied to.
The parties consumed a considerable portion of this trial disputing whether the husband had an employee or independent contractor relationship with Allstate. I find from the evidence that he is an employee. As such, I agree with the defendant that his business expenses may not be deducted from gross income under a literal reading of the child support and arrearage guidelines.[1] The guidelines only allow deduction of reasonable and necessary expenses from self employment and rental income, and define "net income" as gross income minus allowable deductions. § 46b-215a-1 (15).
The problem is presented because the plaintiff is a commission life insurance salesman, but is not self-employed. However, it is still necessary for him to incur some legitimate CT Page 4010-OO and reasonably necessary entertainment, meal and transportation expenses. The plaintiff seeks to deduct from his gross income, business expenses which he claims average between $117 to $130 per week, in addition to the customary allowable deductions, to arrive at his net disposable income for a child support determination in accord with the guidelines.
To the contrary, the defendant asserts that no such deductions should be allowed. I find the business expenses to be overstated and that his reasonable business expenses, while not precisely determinable, are in the area of $60 per week. Although the guidelines do not appear to specifically allow the deduction of such out-of-pocket business expenses for individuals who are not self-employed, I conclude that such deduction would be fair and equitable under the totality of the circumstances. It is unnecessary to decide whether the guidelines simply did not contemplate the scenario presented here. I conclude that in light of the requirement that the guidelines must be considered in addition to, and not in lieu of, the criteria in § 46b-84 (c) in the establishment of the child support awards; see § 46b-215b(b); that it would be unfair or inequitable in this case to apply the guidelines in a mechanical fashion. I therefore believe it appropriate to deviate downward from the guidelines under § 46b-215a-3 (6)(F), as the plaintiff's legitimate business expenses are necessary and are such a special circumstance or equitable factor envisioned by our statutory scheme.
The defendant asserts that the plaintiff's presumptive obligation for child support ought to be $187 per week. I find her calculation flawed, because it overstates the plaintiff's gross income by $11 per week, and fails to factor in a health insurance premium adjustment for the child.
Recomputed, I find that the plaintiff's presumptive child support obligation is $189 per week less the health insurance premium adjustment of $19 per week attributed to the children, for a net payment of $170 per week. Finding a mechanical application of the guidelines unfair or inequitable, as previously stated, I believe a downward departure of $17 per week appropriate, and conclude that the child support award for the two minor children ought to be $153 per week.
The parties were also at issue on arrearages for child support and alimony. The applicable court orders entered CT Page 4010-PP pendente lite were $179 per week child support and $20 per week alimony. The parties had agreed, and the court ordered, that the plaintiff's motion to modify child support, if granted, would be retroactive to August 7, 1995. Accordingly, as the plaintiff's child support obligation is modified, effective August 7, 1995, to $153 per week, his arrearage for child support is calculated to be $2,318 as of the date of trial.
I find that the husband's alimony arrearage due the defendant is $640, also as of the date of trial. In the light of my finding that he has not shown that the wife was responsible for the tax liability which resulted in the interception of his state tax refund, I find no merit in his claim for a credit against the alimony arrearage.
The parties have comparable employability. Each has significant vocational skills. The wife works only part time and could do more to increase her earnings. She also, because of her religious beliefs and affinity to her church, has a policy of tithing 10 percent of her income to her church. In 1995, she disclosed a charitable deduction of $1,300, while past due real estate taxes on the marital home continued unpaid. The wife's tithing practices have also contributed to the parties' marital problems in prior years.
On the whole, the plaintiff husband has a greater opportunity than the wife to acquire capital assets and income in the future.
I have considered all of the criteria in General Statutes §§ 46b-62, 46b-81, 46b-82 and 46b-215a-b, in the determination of the orders set forth below. I have also considered the taxable implications and consequences of the financial orders.
Accordingly, a decree shall enter dissolving the marriage on the ground of irretrievable breakdown. The following orders are also entered.
(1) Joint legal custody of the two minor children are awarded to the parties, with physical custody to mother and reasonable rights of visitation to the father, which will include alternating weekends, and access on summer and school vacation periods and holidays. CT Page 4010-QQ
(2) The father shall pay child support to the mother in the amount of $153 per week, together with $10 per week on the child support arrearage found of $2,318 and $5 per week on the alimony arrearage of $640.
(3) The husband shall pay periodic alimony to the wife in the amount of $20 per week, which shall terminate upon the death of either party, the wife's remarriage or pursuant to General Statutes § 46b-86 (b), or seven years from the date hereof, whichever occurs first.
(4) The current support, alimony and arrearage payments shall be secured by immediate wage garnishment.
(5) The dependency exemptions for the two minor children are assigned to the plaintiff, who may claim them only if he is current on the child support and arrearage orders at the end of the applicable calendar year.
(6) The plaintiff-husband shall maintain and irrevocably designate the wife and two minor children as beneficiaries of his Metropolitan life insurance policy to the extent of $60,000 in equal shares, so long as he is obligated to pay child support or alimony hereunder. As each minor child reaches 18, he is free to designate another beneficiary for such child's share.
(7) The following property is assigned to the wife. The marital dwelling at 95 Starr Street, Norwich, Connecticut, subject to the mortgage and taxes thereon, which she shall pay and save the husband harmless from; the 1991 Hyundai motor vehicle; all of the furnishings, furniture and personal property therein, excepting the items listed in paragraph 8 below; her Fleet checking account, and a forty (40%) percent interest, valued as of June 1, 1996, in the husband's John Hancock pension plan and Allstate profit sharing plan. She shall be the survivor beneficiary of his pension plan, both pre- and post-retirement. In the event she predeceases him, her portion shall revert to him. The assignment of the pension and profit sharing plan interests shall be accomplished by Qualified Domestic Relations Order (QDRO) and this court shall retain jurisdiction over the same until completed and accepted by the plan administrators.
(8) The following property is assigned to the husband: CT Page 4010-RR the 1994 Pontiac motor vehicle subject to the loan thereon, which he shall assume and pay and save the wife harmless therefrom; his Allstate pension plan; the balance of his John Hancock pension and profit sharing plans; the computer and computer software; air conditioner; his tools; and his books and desk.
(9) The plaintiff shall maintain his job-related health insurance for the benefit of the children. The wife shall do likewise when available at reasonable cost. They shall equally share any uncovered/unreimbursed health-related expenses for said children. An order pursuant to General Statutes § 46b-84 (d) shall enter.
(10) The plaintiff shall maintain his job-related health insurance for the benefit of the wife for the statutory period under COBRA and/or applicable state law. He shall pay the premiums for such coverage for two years. Said premium payments shall be deemed periodic alimony and shall terminate sooner upon the death of either party, the wife's remarriage or pursuant to the provisions of § 46b-86 (b).
(11) The plaintiff shall pay toward the wife's attorney's fees the sum of $600 in equal monthly payments of $50 commencing July 1, 1996, and on the first of each month thereafter. The denial of attorney's fees would impair or undermine the other financial orders.
(12) Each spouse shall pay the liabilities shown on Schedule 3 of their financial affidavits filed May 15, 1996, except as otherwise provided herein.
(13) All documents necessary or incidental to the effectuation of these orders shall be completed and exchanged by counsel and the parties within thirty (30) days.