******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LORI K. WINTHROP *v.* MATTHEW WINTHROP
## (AC 40622)
## (AC 40765)

DiPentima, C. J., and Keller and Elgo, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court denying the plaintiff's postjudgment motion for contempt. The judgment of dissolution incorporated the parties' separation agreement, which required the defendant to pay the plaintiff a minimum of $3000 per month in unallocated alimony, with an additional amount owed based on the annual earnings of the defendant. The separation agreement further provided, inter alia, that a loan that the defendant had received from his employer, R Co., was to be forgiven by R Co., and the income imputed to the defendant and reflected on his W-2 form. Subsequently, the plaintiff filed a motion for contempt, which the court denied, but the court nonetheless agreed with the plaintiff that, for the purpose of calculating additional alimony, the defendant's earned income in 2016 was $168,765.91, the figure reflected on his W-2 form. The court found that, in 2016, the defendant had failed to pay additional alimony as required by the separation agreement and ordered that he pay the plaintiff $3753.18. On appeal, the defendant claimed that the trial court improperly concluded that his earned income was the amount reflected on his W-2 form. Specifically, he claimed, inter alia, that the court, in calculating his earned income, should have excluded his noncash earnings, including amounts allocated in connection with his forgiven debt obligations to R Co., as such income never was actually available to him. The plaintiff cross appealed and claimed that the trial court incorrectly calculated the defendant's additional alimony payments. *Held*:

1. The trial court properly found that the defendant's earned income in 2016 was the amount reflected on his W-2 form and, thus, that he owed additional alimony pursuant to the parties' separation agreement: it was evident that the parties intended earned income to be the amount shown on the defendant's W-2 form, as the separation agreement provided that, upon written request from the plaintiff, the defendant was required to produce his paychecks and W-2 and/or 1099 forms reflecting earned income, and that reading was consistent with the definition of earned income as set forth in the applicable federal statute (26 U.S.C. § 32 [c] [2] [A] [i] and [ii]), which defines earned income as the gross earnings received as compensation from employment and the net earnings received from self-employment; moreover, the defendant could not prevail on his claim that, as a financial advisor who did not receive a salary or hourly wage from his employer but was compensated purely on a commission basis, he was for all practical purposes self-employed and, thus, his earned income should be his net earnings, i.e., his gross compensation minus his business related expenses, and not the figure shown on his W-2 form, as net earnings from self-employment for the purposes of 26 U.S.C. § 32 relate specifically to compensation from an individual's own business or distributions from a partnership of which the individual is a member, the defendant conceded that he was employed by R Co. and that he received his commission as compensation for services rendered as an employee, and the defendant received a W-2 form at the end of the year, which, pursuant to the applicable federal regulation (26 C.F.R. § 31.6051-1 [a]), is required when an employer deducts and withholds taxes from an employee; furthermore, the defendant's claim that the inclusion of his noncash earnings in his earned income was improper was unavailing, as the separation agreement clearly provided that the income imputed to the defendant in connection with his forgiven debt obligations to R Co. was to be included in his earned income for the purposes of calculating his additional alimony obligations, and any claim that that was not the intent of the parties in drafting their separation agreement was contradicted expressly by the unambiguous lan-

guage provided therein.

2. The trial court incorrectly calculated the defendant's additional alimony payments because it failed to include 30 percent of his earned income in excess of $102,000 but less than $150,000; the parties' separation agreement was unambiguous and required the defendant, who earned $168,765.91 in 2016, to pay 30 percent of his earned income in excess of $102,000 but less than $150,000, and 20 percent of his earned income in excess of $150,000 but less than $200,000, and the trial court, which ordered the defendant to pay an additional $3753.18 in alimony representing 20 percent of the income that the defendant earned in excess of $150,000, improperly failed to include 30 percent of the income that the defendant earned in excess of $102,000 but less than $150,000, which is $14,400.

Argued January 16—officially released April 30, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Malone, J.*; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Tindill, J.*, denied the plaintiff's motion for contempt, and the defendant appealed to this court; subsequently, the court, *Tindill, J.*, denied the plaintiff's motion for clarification and the defendant's motion for reargument; thereafter, the plaintiff cross appealed to this court; subsequently, the court, *Tindill, J.*, denied the plaintiff's motion for articulation; thereafter, this court consolidated the appeals. *Reversed in part; judgment directed.*

*Matthew Winthrop*, self-represented, the appellant-appellee (defendant).

*Barbara M. Schellenberg*, for the appellee-appellant (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant, Matthew Winthrop, appeals, and the plaintiff, Lori K. Winthrop, cross appeals, from the order of the trial court denying the plaintiff's postjudgment motion for contempt. The defendant claims that the trial court improperly found that his "earned income," for the purpose of calculating the amount of additional alimony that he owed the plaintiff in 2016, was the amount shown on his W-2 form. The plaintiff contends in her cross appeal that, although the court correctly determined that the defendant's earned income was the figure provided on his W-2 form, it failed to calculate the additional alimony owed in 2016 in accordance with the parties' separation agreement (agreement). We affirm the judgment as to the defendant's appeal and, as to the plaintiff's cross appeal, we reverse the judgment only with respect to the court's calculation of the alimony amount owed by the defendant in 2016.

The following undisputed facts and procedural history are relevant for the purposes of this appeal and cross appeal. The parties were married on November 27, 1996, and their marriage was dissolved on February 9, 2012. The judgment of dissolution incorporated the parties' agreement, which provides, in relevant part, that the defendant is to pay the plaintiff unallocated alimony until September 11, 2019, or until the plaintiff's death, remarriage, or cohabitation for more than three months, whichever event shall occur first. Pursuant to article 3.2 of the agreement, the defendant is required to pay the plaintiff a minimum of $3000 per month, with an additional amount owed based on the annual earnings of the defendant. Specifically, the agreement provides that the defendant is to pay additional alimony as follows: 30 percent of his earned income in excess of $102,000 and less than $150,000; 20 percent of his earned income in excess of $150,000 and less than $200,000; and 0 percent of his earned income in excess of $200,000. The agreement also states in article 3.4 that in any year in which the defendant does not pay the maximum annual alimony amount, he shall provide the plaintiff, upon written request, with copies of his quarterly paychecks and his year-end W-2 or 1099 forms reflecting "earned income."

The agreement also addressed a $160,000 loan that the defendant had received from his employer, Royal Bank of Canada (Royal Bank), of which approximately $46,000 was unspent and in the defendant's possession. According to article 6.2 of the agreement, the entirety of the loan was to be forgiven by Royal Bank, and the income imputed to the defendant, over a series of years, and reflected on his W-2. Moreover, the agreement specified that this imputed income "shall be included in the computation of unallocated alimony . . . ."

On March 7, 2017, the plaintiff filed a postjudgment motion for contempt, which alleged that the defendant had "refused to voluntarily pay alimony based on [his] 2016 earnings and as stipulated in the divorce decree." On June 13, 2017, the court held an evidentiary hearing on the plaintiff's motion and received testimony from both parties. During the hearing, the plaintiff argued that, based on the defendant's 2016 W-2 form, his earned income was $168,765.91, which, thus, required him to pay additional alimony as outlined in the parties' agreement. In response, the defendant stipulated that although he did owe the plaintiff additional alimony, he calculated his earned income to be approximately $104,744. In reaching this figure, the defendant excluded his noncash earnings, including income that had been imputed to him in connection with his forgiven debt obligations to Royal Bank, and deducted from his cash earnings certain business and medical related expenses.

In an order dated June 18, 2017, the court denied the motion for contempt but nonetheless agreed with the plaintiff that, for the purpose of calculating additional alimony, the defendant's earned income was the figure reflected on his W-2 form, i.e., $168,765.91. The court, therefore, found that the defendant had failed to pay additional alimony as required by the parties' agreement and ordered that he pay the plaintiff $3753.18 no later than August 25, 2017.[1] From this decision, both parties now appeal. Additional facts will be set forth as needed.

I

In his appeal, the defendant claims that the court improperly concluded that his earned income was the amount reflected on his W-2 form. Specifically, the defendant argues that the court, in calculating his earned income, should have (1) deducted from his cash earnings the business expenses provided on his 2016 tax return, as these costs were unreimbursed and necessary to the defendant's compensation as a commissioned salesman, and (2) excluded his noncash earnings, including amounts allocated in connection with his forgiven debt obligations to Royal Bank, as such income never was actually available to him. We do not agree.

We begin our analysis of the defendant's claim by setting forth our standard of review. "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts." (Internal quotation marks omitted.) *McTiernan* v. *McTiernan*, 164 Conn. App. 805, 821, 138 A.3d 935 (2016). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation

of the parties and the circumstances connected with the transaction. . . . If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, 181 Conn. App. 309, 322–23, 186 A.3d 771, cert. denied, 329 Conn. 913, 186 A.3d 1170 (2018). "The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 383, 107 A.3d 920 (2015).

Applying the foregoing principles to the present matter, we conclude that the term "earned income" as used in the parties' agreement is unambiguous. By the provisions of the agreement itself, it is evident that the parties intended "earned income" to be the amount shown on the defendant's W-2 form. As stated previously in this opinion, article 3.4 of the agreement provides that, upon written request from the plaintiff, the defendant is required to produce his paychecks and "W-2 and/or 1099's reflecting *earned income*." (Emphasis added.) The inclusion of this provision evinces a clear intent by the parties that the income provided on the defendant's W-2 is his "earned income" for the purpose of ascertaining his additional alimony obligations. Moreover, this reading is consistent with the definition of "earned income" as set forth in 26 U.S.C. § 32 (c) (2) (A), which states: "The term 'earned income' means . . . (i) wages, salaries, tips, and other employee compensation, but only if such amounts are includible in gross income for the taxable year, plus (ii) the amount of the taxpayer's net earnings from self-employment for the taxable year (within the meaning of section 1402 [a]), but such net earnings shall be determined with regard to the deduction allowed to the taxpayer by section 164 (f)." Pursuant to this definition, earned income is the gross earnings received as compensation from employment and the net earnings received from self-employment.[2]

To this second point, however, the defendant contends that, if we conclude the parties intended "earned income" to have the same definition as provided in

26 U.S.C. § 32, he is for all practical purposes "self-employed," and, thus, his earned income should be his net earnings, i.e., his gross compensation minus his business related expenses, and not the figure shown on his W-2. At oral argument before the trial court and this court, the defendant asserted that, as a financial advisor, he does not receive a salary or hourly wage from his employer but is compensated purely on a commission basis. As such, the defendant argued that it is necessary for him to incur significant expenses throughout the year in an effort to maintain his skill and knowledge of the financial industry, as well as to market himself to prospective clients. In support of his position, the defendant has cited in his brief several Superior Court decisions in which business expense deductions were permitted in the calculation of alimony and child support obligations. See *Nedder* v. *Nedder*, Superior Court, judicial district of Middlesex, Docket No. FA-10-4019331-S (May 2, 2013) (court considered business expenses of husband, real estate agent, in determining appropriate alimony award); *Means* v. *Means*, Superior Court, judicial district of New London at Norwich, Docket No. CV-94-315846-S (May 22, 1996) (17 Conn. L. Rptr. 26, 27) (court deviated from child support guidelines to account for husband's business expenses despite fact that he was not self-employed). We find these cases to be inapposite and the defendant's overall argument unpersuasive.

Net earnings from self-employment for the purposes of 26 U.S.C. § 32 relate specifically to compensation from an individual's own business or distributions from a partnership of which the individual is a member. See 26 U.S.C. § 1402 (a) (2012). The defendant concedes that he is employed by Royal Bank and that he receives his commission as compensation for services rendered as an employee. Moreover, he receives a W-2 form at the end of the year, which pursuant to federal regulations is required when an employer deducts and withholds taxes from an employee. See 26 C.F.R. § 31.6051-1 (a) (2018). Although he may be permitted for the purposes of calculating his income tax liability for the calendar year to deduct the expenses that he incurs in connection with his employment, these deductions are nonetheless inconsequential in calculating his earned income, as defined by 26 U.S.C. § 32. Further to this point, the cases cited by the defendant are distinguishable factually insofar as they involved the calculation of child support and alimony payments in circumstances where no separation agreement existed. Accordingly, we discern no merit in the defendant's position that he is self-employed for the purposes of determining his earned income under the agreement.

We now turn to the defendant's second claim that the inclusion of his noncash earnings in his earned income was improper. The defendant submits that it was not the intent of the parties to include imputed

income in the calculation of additional alimony payments because such compensation is "phantom" and not actually available to him. Further, he contends that the loan he received from his employer was spent on marital expenses prior to the parties' divorce and, therefore, the financial burden of this debt should be shared equally. Following a careful review of the record, we conclude that article 6.2 of the agreement is dispositive of this issue.[3] Specifically, that provision clearly states that the income imputed to the defendant in connection with his forgiven debt obligations to Royal Bank is to be included in his earned income for the purposes of calculating his additional alimony obligations. Any claim that this was not the intent of the parties in drafting their agreement is contradicted expressly by the unambiguous language provided therein.

We conclude that, in light of the unambiguous language in the agreement, the trial court properly found that the defendant's earned income was $168,765.91 in 2016, and, thus, he owed additional alimony pursuant to the parties' agreement.

II

In her cross appeal, the plaintiff claims that the trial court incorrectly calculated the defendant's additional alimony payments because it failed to include 30 percent of his earned income in excess of $102,000 but less than $150,000. We agree with the plaintiff and, accordingly, reverse the judgment of the trial court with respect to this finding and direct judgment consistent with this opinion.

In addressing this claim, we iterate our standard of review as to a trial court's interpretation of contractual terms. "If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, supra, 181 Conn. App. 322–23.

Applying this standard to the plaintiff's claim, we conclude that article 3.2 of the agreement, which provides the formula for calculating the defendant's additional alimony obligations, is unambiguous and requires the defendant to pay a percentage of all income earned in excess of $102,000. As indicated previously in this opinion, the agreement states that the defendant is to pay "30 [percent] of earned income in excess of $102,000 and less than [$150,000]"; "20 [percent] of earned income in excess of $150,000 and less than $200,000"; and "0 [percent] of earned income in excess of $200,000." In finding that the defendant earned $168,765.91, the court ordered the defendant to pay an

additional $3753.18 in alimony, which represents 20 percent of the income that the defendant earned in excess of $150,000. The court failed to include, however, 30 percent of the income that the defendant earned in excess of $102,000 but less than $150,000, which is $14,400. We conclude, therefore, that because article 3.2 clearly sets forth a stepdown structure in which the defendant is required to pay the applicable percentage of any earned income he had in excess of $102,000, he was required to pay $14,400 in addition to the 20 percent of the income he had earned in excess of $150,000, which the court correctly calculated to be $3753.18.[4]

The judgment is reversed in part only as to the amount of additional alimony owed in 2016 and the case is remanded with direction to order the defendant to pay a total of $18,153.18 in additional alimony to the plaintiff; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] On July 5, 2017, the plaintiff filed a motion for clarification, requesting that the court correct its order to comply with the provisions of the agreement. Specifically, the plaintiff argued that the court had failed to include in its calculation 30 percent of the defendant's earned income in excess of $102,000 but less than $150,000. The plaintiff's motion was denied without explanation on August 1, 2017.

[2] In support of his claim that the term "earned income" is ambiguous, the defendant directs our attention to *Lagasse* v. *Lagasse*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-08-4013511-S (January 16, 2018), in which the term "gross earned income" as used in the parties' separation agreement was found to be ambiguous. Aside from the fact that this decision is not controlling on this court, our reading of *Lagasse* reveals that the court turned to the Internal Revenue Code for guidance but concluded that there was no specific definition of "gross earned income." See id. ("[T]he phrase 'gross earned income' . . . is not defined in the . . . separation agreement . . . or in the Internal Revenue Code. The terms 'gross income' and 'earned income' are defined in the Code, but the phrase 'gross earned income' does not appear anywhere in the statute.").

[3] The defendant also claims that the inclusion of the portion of his noncash earnings related to his domestic partner's medical benefits, totaling $7968, which he receives from his employer, is improper. We do not agree; such benefits fall within the definition of gross income as it is defined by 26 U.S.C. § 61 (a) and are not excludable under 26 U.S.C. § 106; therefore, the court properly included this amount in the calculation of the defendant's "earned income."

[4] We note that, pursuant to the agreement, these amounts are in addition to the $3000 per month that the defendant was required to pay irrespective of his earned income in 2016.