******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# L. W. *v.* M. W.*
## (AC 44101)
## (AC 44184)

Bright, C. J., and Moll and Bear, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court denying her postjudgment motion for contempt. The judgment of dissolution incorporated the parties' separation agreement, which required the defendant to pay the plaintiff a minimum of $3000 per month in unallocated alimony, with an additional amount owed based on the annual earnings of the defendant. In her contempt motion, the plaintiff alleged that the defendant failed and refused to comply with the court's order to pay her additional unallocated alimony based on his earned income in 2018. The defendant's 1099 form for 2018 showed his income was $159,079; the court, however, found that the defendant's income for 2018 was $135,569, from which the court deducted certain self-employment expenses, for a net income of $102,363. On this basis, the court held that the defendant did not owe the plaintiff additional alimony and was not in contempt. On appeal, the plaintiff claimed that the court incorrectly calculated the defendant's earned income for 2018. The trial court granted two other of the plaintiff's postjudgment motions for contempt, and the defendant filed a separate appeal. *Held*:

1. The trial court erred when it found that the defendant's earned income for 2018 was $135,569: it was evident that the parties intended the defendant's earned income to be the amount shown on his 1099 form, as the separation agreement provided that, upon written request from the plaintiff, the defendant was required to produce his paychecks and W-2 and/or 1099 forms reflecting earned income, and that amount for 2018 was $159,079; moreover, the court erred when it reduced the defendant's 2018 income to $102,363 by deducting the defendant's self-employment expenses, as the separation agreement contained no reference to and, thus, did not provide for, business deductions for tax purposes when calculating the defendant's earned income, and, as the language of the separation agreement was plain and unambiguous, there was no need to consider the definition of earned income in the federal statute (26 U.S.C. § 32 (c) (2) (A) (2018)) when interpreting the separation agreement.

2. The defendant could not prevail on his claim that the trial court erred in granting the plaintiff's motions for contempt:

   a. This court declined to review the defendant's claim that the court abused its discretion when it granted the plaintiff's contempt motions on the basis that the record was inadequate for review; the defendant filed a Judicial Branch form pursuant to the rules of practice (§§ 63-4 (a) and 63-8 (a)) on which he wrote that he had decided not to order transcripts from the hearings on the plaintiff's motions for contempt and, in the absence of the transcripts, this court could not evaluate the defendant's arguments in support of his appellate claim without impermissibly resorting to speculation.

   b. This court declined to review the defendant's claim that the court abused its discretion in ordering him to pay attorney's fees in connection with the plaintiff's motions for contempt on the basis that the record was inadequate for review; due to the defendant's failure to request transcripts, this court could not evaluate the trial court's reasoning for awarding attorney's fees to the plaintiff, and, contrary to the defendant's claim, neither an affidavit of attorney's fees nor knowledge of the plaintiff's exact legal expenses was required to provide sufficient evidence of the reasonableness of the award.

Argued September 21—officially released November 2, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other

relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Malone, J.*; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *M. Moore, J.*, granted in part the plaintiff's motions for contempt, and the plaintiff appealed to this court; subsequently, the court, *M. Moore, J.*, denied the defendant's motions to reargue, and the defendant appealed to this court; thereafter, this court consolidated the appeals. *Affirmed in part*; *reversed in part*; *further proceedings*.

*Alexander Copp*, with whom, on the brief, were *Rachel A. Pencu* and *Jenna T. Cutler*, for the appellant in Docket No. AC 44101 (plaintiff).

*M. W.*, self-represented, the appellant in Docket No. AC 44184 (defendant).

*Alexander Copp*, with whom, on the brief, was *Rachel A. Pencu*, for the appellee in Docket No. AC 44184 (plaintiff).

*Opinion*

BRIGHT, C. J. These two appeals arise out of three separate postjudgment motions for contempt filed by the plaintiff, L. W. In Docket No. AC 44101, the plaintiff appeals from the judgment of the trial court denying her motion for contempt dated November 25, 2019, and filed on November 27, 2019 (November, 2019 motion), alleging that the trial court abused its discretion by failing to find the defendant, M. W., in contempt. In Docket No. AC 44184, the defendant appeals from the judgments of the trial court granting the plaintiff's two motions for contempt dated October 24, 2019, and filed on October 25, 2019 (October, 2019 motions), alleging that the trial court abused its discretion by finding him in contempt.[1] We agree with the plaintiff in AC 44101 and decline to review the defendant's claims in AC 44184 because the defendant has failed to provide us with an adequate record. Accordingly, we reverse the judgment of the trial court denying the plaintiff's November, 2019 motion for contempt and remand the case for further proceedings on that motion, and we affirm the judgments of the trial court granting the plaintiff's October, 2019 motions for contempt.

The following facts and procedural history are relevant to both appeals. "The parties were married on November 27, 1996, and their marriage was dissolved on February 9, 2012. The judgment of dissolution incorporated the parties' [separation] agreement, which provides, in relevant part, that the defendant is to pay the plaintiff unallocated alimony until September 11, 2019, or until the plaintiff's death, remarriage, or cohabitation for more than three months, whichever event shall occur first. Pursuant to article 3.2 of the agreement, the defendant is required to pay the plaintiff a minimum of $3000 per month, with an additional amount owed based on the annual earnings of the defendant.[2] . . . The agreement also states in article 3.4 that in any year in which the defendant does not pay the maximum annual alimony amount, he shall provide the plaintiff, upon written request, with copies of his quarterly paychecks and his year-end W-2 or 1099 forms reflecting earned income." (Footnote added; internal quotation marks omitted.) *Winthrop* v. *Winthrop*, 189 Conn. App. 576, 579–80, 207 A.3d 1109 (2019).

The agreement also addresses the possible eventuality of the parties' obligation to pay college expenses for the couple's two children, providing that "[t]he [c]ourt shall reserve jurisdiction to enter [an] order concerning post majority education support, as set forth under Connecticut General Statute[s] § 46-[5]6c." On March 27, 2019, the trial court entered an order for the parties' payment of postsecondary education support in which it required "the defendant to pay 60 percent of the maximum amount of the educational expenses for each minor child and the plaintiff to pay 40 percent."

In October, 2019, the plaintiff filed two postjudgment motions for contempt. In the first motion, the plaintiff alleged that "the defendant failed and refused to provide the plaintiff, or her counsel, with any documentation to establish his 2018 earned income."[3] In the second motion, the plaintiff alleged that the defendant had "failed and refused" to pay his share of their child's University of Rhode Island tuition, which forced the plaintiff to take out a loan to cover those expenses. Thereafter, in November, 2019, the plaintiff filed a third motion for contempt, alleging that the "defendant has failed and refused to comply with the court's order to pay the plaintiff any additional unallocated alimony based on the amount of his earned income for the year 2018 as required by the separation agreement . . . ."

In two separate orders dated April 21, 2020, the trial court granted both of the plaintiff's October, 2019 motions. The trial court further ordered the defendant "to pay counsel fees to the plaintiff in the amount of $2500 within 30 days" for each contempt finding. In a third order, also dated April 21, 2020, the trial court denied the plaintiff's November, 2019 motion for contempt. According to the court's order, "[t]he defendant was to pay the plaintiff 30 percent of earned income in excess of $102,000 and less than $150,000. . . . The motion for contempt filed by the plaintiff claims the defendant failed to pay the plaintiff additional alimony in 2018 based on this earned income. Pursuant to the defendant's tax return for 2018, the defendant had business income of $135,569. After [deducting] self-employment tax and self-employed health insurance, the defendant's income was $102,363." The court consequently concluded that, based on the total amount of the defendant's net income, as reflected in his tax return, the plaintiff was not entitled to any additional alimony and the defendant was not in contempt. The plaintiff thereafter appealed to this court from the judgment denying her November, 2019 motion for contempt.

On May 13, 2020, in response to the trial court's orders concerning the October, 2019 motions, the defendant filed two motions to reargue, alleging several factual and legal errors with the court's contempt findings. The trial court denied both motions, and the defendant appealed.

On May 22, 2020, in response to the trial court's order on her November, 2019 motion, the plaintiff filed a motion for articulation, seeking an explanation for how the court reached its conclusion that the defendant's earned income was $102,363, when the defendant's 1099 form for the year showed that his income was $159,079. The trial court denied the motion.

I

AC 44101

The plaintiff contends that the trial court erred when

it denied her November, 2019 motion for contempt because the court incorrectly calculated the defendant's earned income for the year 2018. We agree.

We begin by setting forth the applicable standard of review and principles of law that guide our analysis. "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts." (Internal quotation marks omitted.) *McTiernan* v. *McTiernan*, 164 Conn. App. 805, 821, 138 A.3d 935 (2016). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, 181 Conn. App. 309, 322–23, 186 A.3d 771, cert. denied, 329 Conn. 913, 186 A.3d 1170 (2018). "The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 383, 107 A.3d 920 (2015). Because resolution of the plaintiff's claim requires us to interpret the unambiguous applicable provisions of the agreement, our standard of review is plenary.

In *Winthrop* v. *Winthrop*, supra, 189 Conn. App. 582–83, an earlier appeal concerning the application of articles 3.2 and 3.4 of the parties' agreement, this court had an opportunity to interpret the term " 'earned income,' " as used in the agreement. In that case, as in the present case, the plaintiff had filed a motion for contempt claiming that the defendant had failed to pay additional alimony based on his earned income. Id., 580. The plaintiff's motion in that case related to the defendant's 2016 income, which was reported on a W-2 form from the defendant's employer. Id. Although there was no provision in the agreement that authorized the deduction of business expenses from his stated W-2 form income to determine his 2016 earned income, the

defendant argued that he owed no additional alimony because, as a commissioned salesperson, he had certain business expenses that needed to be deducted from his W-2 income to accurately state his true earned income. Id., 583–84. The trial court denied the plaintiff's motion for contempt but rejected the defendant's argument that he was entitled to deduct certain business expenses when determining earned income. Id., 580–81. The court concluded that earned income was defined in the separation agreement as the figure set forth on his W-2 form and ordered the defendant to pay additional alimony based on that figure. Id.

On appeal, this court agreed with the trial court and concluded "that the term 'earned income' as used in the parties' agreement is unambiguous." Id., 582. More specifically, the term "earned income" meant the amount shown on the defendant's W-2 form because "the agreement provides that, upon written request from the plaintiff, the defendant is required to produce his paychecks and W-2 and/or 1099's reflecting *earned income*. . . . The inclusion of this provision evinces a clear intent by the parties that the income provided on the defendant's W-2 [form] is his earned income for the purpose of ascertaining his additional alimony obligations." (Emphasis in original; internal quotation marks omitted.) Id., 582–83.

In the same opinion, this court also considered the defendant's argument that, because it was necessary for him to incur significant expenses in order to do his job, he should be allowed to deduct those expenses from his earned income. Id., 583–84. We disagreed and held that, "[a]lthough [the defendant] may be permitted for the purposes of calculating his income tax liability . . . to deduct the expenses that he incurs in connection with his employment, these deductions are nonetheless inconsequential in calculating his earned income . . . ." Id., 584.

Our analysis in *Winthrop* compels the same result in the present case. Although in 2018 the defendant was not an employee who received a W-2 form, his earned income for 2018 was reported on a 1099 form. As we noted in *Winthrop*, the separation agreement provides that, "upon written request from the plaintiff, the defendant is required to produce his paychecks and W-2 *and/or 1099's* reflecting earned income." (Emphasis altered; internal quotation marks omitted.) Id., 582. Just as we concluded in *Winthrop* that this language unambiguously evinces a clear intent by the parties that the defendant's " 'earned income,' " as used for purpose of calculating additional alimony, is the amount listed on the defendant's W-2 form; id., 582–83; it similarly evinces the same intent if the defendant receives a 1099 form instead of or in addition to a W-2 form.

Furthermore, as this court held in *Winthrop*, any business or self-employment deductions that the defen-

dant might make for tax purposes are irrelevant when calculating his earned income under the separation agreement. Id., 584. According to the parties' agreement, the defendant's "earned income" is the amount reflected on his W-2 and/or 1099 form. "Earned income," as unambiguously set forth in the agreement, contains no reference to, and, thus, does not include, business deductions for tax purposes. Therefore, under the terms of the agreement, any deductions made by the defendant for tax reasons are "inconsequential in calculating his earned income  . . . ." Id.

We also are not persuaded by the defendant's argument[4] that, because in 2018 he was a self-employed independent contractor and not a W-2 employee, he was entitled to deduct certain business expenses from his gross income to arrive at his net income. It appears that in making this argument the defendant is relying on this court's reference in *Winthrop* to the Internal Revenue Code's definition of " 'earned income.' " See 26 U.S.C. § 32 (c) (2) (A) (2018).[5] After quoting this definition, the court stated: "Pursuant to this definition, earned income is the gross earnings received as compensation from employment and the net earnings received from self-employment." *Winthrop* v. *Winthrop*, supra, 189 Conn. App. 583. Given the defendant's oral argument before us in the present appeal, it might be that, although there is no language in the agreement referring to the Internal Revenue Code's definition of earned income, the defendant relied on this language in switching his status from a W-2 employee in 2016 to a 1099 contractor in 2018.

The defendant's reliance on this court's general reference in *Winthrop* to the Internal Revenue Code's definition of earned income is misplaced. The court's reference, even assuming arguendo that it was somehow relevant to the specific terms of the agreement, was, at most, purely dicta. See id., 583 n.2. Indeed, this court mentioned that provision to distinguish *Winthrop* from a different case wherein a trial court found that the parties' agreement was ambiguous as to the definition of earned income and thus relied on the Internal Revenue Code's definition of " 'gross earned income' " to resolve that ambiguity. Id.; see also *Lagasse* v. *Lagasse*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-08-4013511-S (January 16, 2018). Because the provision of the agreement at issue in *Winthrop* was not ambiguous, there was no need to consider the Internal Revenue Code when interpreting the agreement. *Winthrop* v. *Winthrop*, supra, 538 n.2. The same is true in the present appeal, where the same unambiguous earned income language in the agreement is at issue. Thus, there is no need to resort to the Internal Revenue Code to determine what that term means. See *Schimenti* v. *Schimenti*, 181 Conn. App. 385, 397, 186 A.3d 739 (2018) ("[w]hen only one interpretation of a contract is possible, the court need not look outside

the four corners of the contract" (internal quotation marks omitted)).

Applying the plain and unambiguous language of the parties' agreement, we conclude that the trial court erred when it found, based on the defendant's tax return, that the defendant's earned income for 2018 was $135,569, instead of the $159,079 that was listed on the defendant's 1099 form. We further conclude that the trial court erred when it reduced the defendant's earned income to $102,363 by deducting the defendant's self-employment expenses from the amount of the defendant's 1099 form earned income.

Given the unambiguous language of the separation agreement, we conclude that the defendant's 2018 earned income was the amount listed on his 1099 form for that tax year: $159,079. Given that amount, pursuant to the parties' agreement it is clear that the defendant owes the plaintiff additional alimony from 2018.[6] Nevertheless, whether the defendant's failure to pay the required amount was wilful is a question of fact for the trial court. We therefore reverse the trial court's judgment denying the plaintiff's November, 2019 motion for contempt and remand the matter to the trial court with direction to hold a new contempt hearing on that motion to determine whether the defendant's failure to comply with the separation agreement was wilful, and, in any event, to determine the amount of additional alimony owed to the plaintiff.

II

AC 44184

A

The defendant contends that the trial court abused its discretion when it granted both of the plaintiff's October, 2019 motions for contempt. With respect to the first motion, the defendant argues that the court erred because it (1) never informed him of his right to counsel or that incarceration was not a possibility, and (2) found him in contempt even though he eventually provided the plaintiff with the requested tax documents. As for the second motion, the defendant asserts that the court erred because it (1) never informed him of his right to counsel or that incarceration was not a possibility, and (2) found him in contempt even though he had a payment plan in place with the University of Rhode Island and was current with that plan. We decline to review the defendant's claims due to an inadequate record.

Practice Book § 61-10 (a) provides: "It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire record is complete, correct and otherwise perfected for presentation on appeal." Further, "[t]his court does not presume error on the part of the trial court; error must be demonstrated by an appellant on the

basis of an adequate record." (Internal quotation marks omitted.) *Lucarelli* v. *Freedom of Information Commission*, 136 Conn. App. 405, 410, 46 A.3d 937, cert. denied, 307 Conn. 907, 53 A.3d 222 (2012). "[A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record . . . . Without the necessary factual and legal conclusions . . . any decision made by us respecting [the claims raised on appeal] would be entirely speculative." (Internal quotation marks omitted.) *Cianbro Corp.* v. *National Eastern Corp.*, 102 Conn. App. 61, 72, 924 A.2d 160 (2007). "If an appellant fails to provide an adequate record, this court may decline to review the appellant's claim." *Federal National Mortgage Assn.* v. *Buhl*, 186 Conn. App. 743, 753, 201 A.3d 485 (2018), cert. denied, 331 Conn. 906, 202 A.3d 1022 (2019). "[A]lthough we afford self-represented parties some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Lucarelli* v. *Freedom of Information Commission*, supra, 410.

Our analysis of these claims begins and ends with our consideration of the adequacy of the record provided by the defendant. After examining the record provided to us, we conclude that the defendant has failed to provide an adequate record that would enable our review of his claims on appeal. In the present case, the trial court held multiple hearings on the plaintiff's two October, 2019 motions for contempt.[7] In his brief, the defendant contends that the trial court (1) failed to inform him of certain legal rights on the record, and (2) made several erroneous factual findings. On September 8, 2020, however, he submitted a JD-ES-38 form pursuant to Practice Book §§ 63-4 (a) and 63-8 (a), on which he wrote, "I have decided to not order the transcript[s] for this case." In the absence of these transcripts, we cannot evaluate the defendant's arguments in support of his appellate claims without impermissibly resorting to speculation. See *Berger* v. *Deutermann*, 197 Conn. App. 421, 425–26, 231 A.3d 1281 (declining to consider plaintiff's claims on appeal when plaintiff failed to order transcripts from trial), cert. denied, 335 Conn. 956, 239 A.3d 318 (2020). Accordingly, we decline to review these claims.

B

Last, the defendant contends that the court improperly ordered him to pay attorney's fees in connection with the plaintiff's two October, 2019 motions for contempt. We again decline to review this claim due to an inadequate record.

General Statutes § 46b-87 provides in relevant part that, "[w]hen any person is found in contempt of an order of the Superior Court . . . the court may award

to the petitioner a reasonable attorney's fee . . . such sums to be paid by the person found in contempt . . . ." We review a trial court's ruling on attorney's fees for an abuse of discretion. *Gil* v. *Gil*, 110 Conn. App. 798, 802, 956 A.2d 593 (2008). Under the abuse of discretion standard, "[w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Landry* v. *Spitz*, 102 Conn. App. 34, 59, 925 A.2d 334 (2007).

In the present case, we cannot review whether the attorney's fees awarded were proper because, due to the defendant's failure to request the transcripts, we are unable to ascertain the court's reasoning for the award. As noted in part II A of this opinion, "[i]t is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002). "If an appellant fails to provide an adequate record, this court may decline to review the appellant's claim." *Federal National Mortgage Assn.* v. *Buhl*, supra, 186 Conn. App. 753. Accordingly, we decline to address the defendant's claim that the court's award of attorney's fees was an abuse of discretion. See id.

We also note, contrary to the defendant's argument on appeal, that an affidavit of attorney's fees is not required to provide sufficient evidence of the reasonableness of an award. See *Smith* v. *Snyder*, 267 Conn. 456, 480, 839 A.2d 589 (2004). Trial courts may, instead, award such fees on any number of factors including "general knowledge of the case, sworn affidavits or other testimony, itemized bills, and the like." Id.; see also *Gil* v. *Gil*, supra, 110 Conn. App. 807 (in making attorney's fees determination, court is allowed to rely on familiarity with complexity of legal issues involved, as well as court's experience and legal expertise). Moreover, because an award of attorney's fees in a contempt proceeding is punitive, not compensatory, knowledge of the prevailing party's exact legal expenses is not required for the trial court to properly determine the amount of an award. See *Gil* v. *Gil*, supra, 807; see also *Pace* v. *Pace*, 134 Conn. App. 212, 218, 39 A.3d 756 (2012) ("[m]oreover, because the award of attorney's fees pursuant to § 46b-87 is punitive, rather than compensatory, the court properly may consider the defendant's behavior as an additional factor in determining both the necessity of awarding attorney's fees and the proper amount of any award").

The judgment in Docket No. 44101 denying the plain-

tiff's November, 2019 motion for contempt is reversed, and the case is remanded with direction to conduct a hearing on that motion; the judgments in Docket No. 44184 granting the plaintiff's October, 2019 motions for contempt are affirmed.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] We note that the "JDNO notice" of the order granting the second October, 2019 motion and the "JDNO notice" of the order denying the November, 2019 motion each listed an incorrect entry number for the motion at issue. It is clear from the language of the court's orders that the court granted the second October, 2019 motion and denied the November, 2019 motion.

[2] "Specifically, the agreement provides that the defendant is to pay additional alimony as follows: 30 percent of his earned income in excess of $102,000 and less than $150,000; 20 percent of his earned income in excess of $150,000 and less than $200,000; and 0 percent of his earned income in excess of $200,000." *Winthrop* v. *Winthrop*, 189 Conn. App. 576, 579, 207 A.3d 1109 (2019).

[3] According to the plaintiff, in 2018, the defendant did not pay the maximum amount of annual support. Thus, pursuant to the parties' separation agreement, the defendant was required to provide, upon written request from the plaintiff, "copies of his quarterly paychecks and his year-end W-2 or 1099 forms reflecting his earned income." The plaintiff requested this documentation on October 2, 2019.

[4] The defendant did not file an appellee's brief in AC 44101. As a result, this court ordered that the appeal would "be considered on the basis of the plaintiff-appellant's brief and the record as defined by Practice Book § 60-4 and, pursuant to Practice Book § 70-4, the defendant-appellee will not be permitted to argue." Despite this order, the defendant, at the time that AC 44101 was called for argument, objected to the court's order that he was not permitted to argue in that appeal. The court overruled his objection. Nonetheless, during his oral argument in AC 44184, the defendant argued in opposition to the plaintiff's claim in AC 44101. Although such argument was inconsistent with this court's order in AC 44101, we, in the exercise of our discretion, have considered the defendant's oral argument in analyzing the plaintiff's claim.

[5] "The term 'earned income' means—(i) wages, salaries, tips, and other employee compensation, but only if such amounts are includible in gross income for the taxable year, plus (ii) the amount of the taxpayer's net earnings from self-employment for the taxable year (within the meaning of section 1402 (a)), but such net earnings shall be determined with regard to the deduction allowed to the taxpayer by section 164 (f)." 26 U.S.C. § 32 (c) (2) (A) (2018).

[6] See footnote 2 of this opinion.

[7] The parties first appeared in court on the plaintiff's October, 2019 motions on December 16, 2019. That hearing was continued, allegedly so that the defendant could secure legal counsel. The parties later appeared in court on February 24, 2020, to argue the motions.